*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0451a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

JOSEPH ARNOLD,

        *Defendant-Appellant.*

No. 04-5384

———————————

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 03-20089—John Phipps McCalla, District Judge.

Submitted: March 9, 2005

Decided and Filed: November 23, 2005

Before: MOORE and SUTTON, Circuit Judges; CARMAN, Judge.[*]

———————————

## COUNSEL

**ON BRIEF:** Robert C. Brooks, Memphis, Tennessee, for Appellant. David N. Pritchard, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

    The court delivered a PER CURIAM opinion. SUTTON, J. (pp. 10-14), delivered a separate dissenting opinion.

———————————

## AMENDED OPINION

———————————

    PER CURIAM. This matter is before the Court on the government's petition for rehearing en banc. Upon consideration of the relevant briefs and the record, we vacate our prior opinion, *United States v. Arnold*, 410 F.3d 895 (6th Cir. 2005), and replace it with this amended opinion.

    On November 5, 2003, Defendant-Appellant, Joseph Arnold ("Arnold"), was convicted after a trial by jury in the United States District Court for the Western District of Tennessee of possession of a firearm by a convicted felon. Arnold appealed his conviction to this Court. On appeal, Arnold argues that the District Court committed error in allowing the out-of-court statements of his accuser to be introduced during his trial, that the proof submitted to the jury was not constitutionally sufficient to sustain the guilty verdict, and that the Court committed error in excluding a witness

———————————

[*] The Honorable Gregory W. Carman, United States Court of International Trade, sitting by designation.

1

whom the defense sought to introduce to impeach the statements of the accuser. For the reasons stated herein, we **REVERSE** and **REMAND** the case for entry of a judgment of acquittal.

## I. BACKGROUND

At about 7:43 a.m. on September 19, 2002, a woman called the 911 emergency telephone number in Memphis, Tennessee, to report that her mother's boyfriend — Arnold — had threatened her with a gun. At the end of the call, the caller identified herself as Tamica Gordon ("Gordon"). At approximately 8:00 a.m., local police officers were dispatched to a Memphis address and found a young woman upset to the point that she was having difficulty speaking. The officers later learned that the young woman's name was Tamica Gordon. Although no witness during the trial testified to such, the young woman the police met was apparently also the same woman who made the 911 call.

Gordon told the officers that Arnold "pulled a gun on her" and threatened to kill her.[1] (J.A. at 114.) Gordon described the gun as a "black handgun." (J.A. at 127.) She did not indicate that the gun had any special characteristics. An officer interpreted Gordon's hand gestures to indicate a semiautomatic weapon with a chambered round.

During a brief conversation,[2] Gordon began to calm. A short time after the officers arrived, a car pulled up to the address where Gordon and the officers were conversing. A woman was driving the car, and a man was in the passenger seat. As the car pulled up, Gordon became excited again. She pointed at the car and told the officers that the man in it was the same man who had pointed a gun at her.

The officers "went to the car, asked [Arnold] to step out and patted him down for weapons." (J.A. at 117.) No weapons were found. Arnold was cooperative and did not attempt to elude the police or run away. The officers then asked for and received consent from the car's owner (Gordon's mother) to search the automobile. Under the passenger seat of the automobile, the officers found a black, semiautomatic handgun with a chambered round. The gun was in a clear plastic bag when the police located it. There were no fingerprints on the gun, and it was not stolen. The prosecution submitted no evidence that the gun belonged to Arnold, and Arnold did not admit that the gun was his.

The government subpoenaed Gordon for the trial, but she did not appear. The District Court issued a warrant for Gordon's arrest, but she could not be produced before or during the trial.

The government moved at trial to introduce a tape of the 911 call alleged to have been made by Gordon and statements she later made to the police at the scene of Arnold's arrest. The government argued that the 911 tape was admissible under two exceptions to the hearsay rule: excited utterance and present sense impression. The government argued that Gordon's statements to the police were admissible as excited utterances.

After a hearing out of the presence of the jury, the District Court ruled that a redacted 911 tape was admissible as an excited utterance but not as a present sense impression. The District Court also ruled that Gordon's statements to the police at the scene of Arnold's arrest were admissible as

---

[1] Gordon did not testify at trial. Therefore, all references in this opinion to Gordon's statements and actions in the presence of the responding officers are derived from the officers' testimony.

[2] The initial conversation between Gordon and the officers apparently lasted between thirty seconds and five minutes.

excited utterances.  In issuing his ruling, the District Judge stated, "[i]t would not upset me if the Court of Appeals overturned this determination, it wouldn't bother me."  (J.A. at 80.)

## II.  ANALYSIS

On appeal, Arnold asserts that his conviction should be overturned for any, or the combination, of three errors that occurred at trial:

1.  The out-of-court statements of Gordon were erroneously admitted;
2.  The proof offered was constitutionally insufficient to sustain a conviction; and
3.  Defense counsel should have been permitted to present an impeachment witness.

"Where the sufficiency of the evidence is properly before us, we consider that issue first because it is determinative of whether the appellant may be retried." *United States v. Aarons*, 718 F.2d 188, 189 n.1 (6th Cir. 1983); *see also United States v. Orrico*, 599 F.2d 113, 116 (6th Cir. 1979) ("We decide the issue of sufficiency of the evidence, rather than admissibility, because the former issue is determinative of the question whether [the defendant] may be retried."); *Delk v. Atkinson*, 665 F.2d 90, 93 n.1 (6th Cir. 1981) ("Several courts including this one have indicated that where it is claimed on appeal from a federal conviction that the evidence was insufficient, the reviewing court is required to decide the sufficiency question even though there might be other grounds for reversal which would not preclude retrial.").

## A.  Standard of Review

In reviewing Arnold's insufficient-evidence claim, "we must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in *Jackson*).  "This Court reverses a judgment for insufficiency of the evidence 'only if [the] judgment is not supported by substantial and competent evidence upon the record as a whole.'" *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir.) (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)) (alteration in original), *cert. dismissed*, — U.S. —, 126 S. Ct. 33 (2005).  "In addressing sufficiency of the evidence questions, this Court has long declined to weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury." *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002) (quoting *United States v. Ferguson*, 23 F.3d 135, 140 (6th Cir.), *cert. denied*, 513 U.S. 900 (1994)) (internal quotation marks omitted). "This standard places a 'very heavy burden' upon a defendant making a sufficiency of the evidence challenge." *Id.* (quoting *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000)).

When reviewing a sufficiency claim, we consider *all* the evidence, even if it was improperly admitted at trial.  *See United States v. Quinn*, 901 F.2d 522, 531 (6th Cir. 1990) ("We are . . . left with determining whether the evidence ruled inadmissible, with that which was properly presented before the jury, was sufficient under *Jackson v. Virginia* . . . ."); *Johnson v. Coyle*, 200 F.3d 987, 994 (6th Cir. 2000) (recognizing *Quinn* and therefore considering — with respect to a habeas challenge claiming insufficient evidence — hearsay that the state supreme court had held to be improperly admitted at trial).  The Supreme Court offered the following rationale for this rule:

> [A] reversal for insufficiency of the evidence should be treated no differently than a trial court's granting a judgment of acquittal at the close of all the evidence. A trial court in passing on such a motion considers all the evidence it has admitted, and to make the analogy complete it must be this same quantum of evidence which is considered by the reviewing court.

*Lockhart v. Nelson*, 488 U.S. 33, 41-42 (1988).

## B. Merits

Arnold was convicted of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). "To obtain a conviction pursuant to § 922(g)(1), the government must prove beyond a reasonable doubt: (1) that the defendant has a prior conviction for a crime punishable by imprisonment for a term exceeding one year; (2) that the defendant thereafter knowingly possessed the firearm and ammunition specified in the indictment; and (3) that the possession was in or affecting interstate commerce." *United States v. Schreane*, 331 F.3d 548, 560 (6th Cir.) (quoting *United States v. Daniel*, 134 F.3d 1259, 1263 (6th Cir.) (internal quotation marks omitted), *cert. denied*, 525 U.S. 830 (1998)), *cert. denied*, 540 U.S. 973 (2003). On appeal, Arnold challenges only the possession element.

Evidence of either actual or constructive possession of a firearm is sufficient to sustain the verdict. *United States v. Moreno*, 933 F.2d 362, 373 (6th Cir.), *cert. denied*, 502 U.S. 895 (1991). "Both actual possession and constructive possession may be proved by direct or circumstantial evidence." *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir.), *cert. denied*, 414 U.S. 866 (1973).

The prosecution presented the following evidence to establish possession: (1) the gun that was found under Arnold's seat in Gordon's mother's car and (2) Gordon's statements to the 911 dispatcher and the responding officers that at some unspecified time before the discovery of the firearm, Arnold threatened Gordon with a black gun.[3] For the following reasons, we find that the evidence presented at Arnold's trial was insufficient to support his conviction.

### 1. Actual Possession

"Actual possession exists when a tangible object is in the immediate possession or control of the party." *United States v. Beverly*, 750 F.2d 34, 37 (6th Cir. 1984) (quoting *Craven*, 478 F.2d at 1333). Put another way, "[a] person who knowingly has direct physical control over a thing at a given time is then in actual possession of it." *United States v. Frederick*, 406 F.3d 754, 765 (6th Cir. 2005) (quoting *United States v. Wolfenbarger*, 426 F.2d 992, 994 (6th Cir. 1970)) (internal quotation marks omitted). Here, the prosecution presented no evidence showing that Arnold had "direct physical control over" the relevant "tangible object," i.e., the gun recovered from the vehicle, at the "given time," i.e., when the police found the firearm. The gun was not found on Arnold's person. *See United States v. Pugh*, 405 F.3d 390, 394, 404 (6th Cir. 2005) (officers found the defendant in bed with a shotgun "beneath his body," so he "actually possessed the gun when he was apprehended"). Nor did the officers see Arnold holding the firearm just prior to its recovery. *See United States v. Caraway*, 411 F.3d 679, 680, 683 (6th Cir. 2005) (officer saw the defendant holding a firearm, which was then recovered where the officer saw the defendant drop it while fleeing); *United States v. Martin*, 399 F.3d 750, 754 (6th Cir. 2005) (same); *Barnett*, 398 F.3d at 522 (same).

---

[3] Gordon included no additional details in her description of the firearm; however, an officer interpreted her hand gestures to indicate a semiautomatic gun with a chambered round.

Other than the firearm itself, the government's only evidence is Gordon's thrice-repeated accusation that Arnold had wielded a gun while threatening her. This evidence does not go to the actual possession of the firearm recovered from the vehicle at the time that it was discovered; instead, it suggests that at some earlier time, Arnold might have possessed some theoretical gun that was never recovered. As we have already noted, however, conviction requires proof that Arnold "possess[ed] the firearm and ammunition *specified in the indictment.*" *Schreane*, 331 F.3d at 560 (emphasis added). In light of this rule, Gordon's description — statements referring to a black handgun and gestures interpreted by an officer to indicate a semiautomatic with a chambered round — was too vague for the jury to reasonably conclude that the gun found under Arnold's seat was the same firearm that Arnold allegedly used to threaten Gordon, especially given police testimony that roughly half of all handguns are black.[4]  (J.A. at 128.)

---

[4]The dissent asserts that there was sufficient evidence to prove that the two guns were one and the same and that Arnold therefore actually possessed it. For various reasons, the cases cited by the dissent are readily distinguishable.

In several cases, an officer saw the defendant both holding the firearm and throwing it away while fleeing, and the gun was recovered either where the defendant was initially encountered or along the path of his flight. *Barnett*, 398 F.3d at 522; *United States v. Smith*, 79 F. App'x 97, 99 (6th Cir. 2003) (unpublished opinion); *see also United States v. Burl*, 13 F. App'x 408, 409, 411-12 (6th Cir. 2001) (unpublished opinion) (an officer saw the fleeing defendant "shifting the gun between his left and right hands" before losing sight of him; a firearm matching the one the officer had seen was found in the yard of a nearby house). No such evidence was presented here.

In two cases, the firearm was recovered in a vehicle owned or operated by the defendant. *United States v. Patterson*, 23 F.3d 1239, 1243-44 (7th Cir.) (also, at trial the victim-witness identified the recovered firearm as the one the defendant had used to threaten her), *cert. denied*, 513 U.S. 1007 (1994); *United States v. Black*, 525 F.2d 668, 669 (6th Cir. 1975) (also, ammunition and a rack fitting the recovered firearm were found in the defendant's home, and a witness testified that he had seen the defendant with that firearm on several prior occasions). Arnold neither owned nor drove the vehicle in which the gun was discovered. For the same reason, we do not rely on cases in which the firearm was found in a residence owned or otherwise controlled by the defendant. *United States v. Crowe*, 291 F.3d 884, 885-87 (6th Cir. 2002) (also, the defendant admitted that he kept a firearm in his bedroom and an officer saw the defendant carrying a similar gun on a prior occasion); *United States v. Brewer*, 20 F. App'x 539, 540-41 (7th Cir. 2001) (unpublished opinion) (also, the defendant, who claimed the gun belonged to his wife, was seen wearing his wife's security-guard shirt, hat, and holster); *United States v. Smith*, No. 90-2293, 1991 WL 182634, at *1, *3 (6th Cir. Sept. 18, 1991) (unpublished opinion) (firearm 1: a witness bought the firearm for the defendant, witnesses saw the defendant with the firearm, and an owner's manual and ammunition for that type of gun was found in the defendant's apartment; firearm 2: a witness "knew" that the defendant carried that type of gun on his person, another witness saw the defendant outside his door and heard him yell "Open the door or I'll shoot" before he was shot, and the defendant later admitted to shooting that witness; firearm 3: the gun was found in a strong box only accessible to the defendant and his girlfriend, ammunition for that type of gun and photographs of the defendant holding that type of firearm were found in the defendant's apartment, and one or more witnesses testified that the defendant used that gun to threaten other drug dealers).

Another case featured an assortment of additional evidence that is absent in the instant case. *United States v. Whitis*, No. 94-6333, 1995 WL 462423, at *1-*2, *4 (6th Cir. Aug. 3, 1995) (unpublished opinion) (the defendant's girlfriend recognized the firearm as the one she and the defendant purchased together from a pawnshop, the pawnshop owner remembered that the two of them had purchased the firearm, and the firearm purchase form was filled out by the defendant), *cert. denied*, 516 U.S. 1032 (1995).

Two other cases are inapposite because the defendant did not challenge and the court did not review the sufficiency of the evidence of possession. *United States v. Chesney*, 86 F.3d 564, 572-73 (6th Cir. 1996) (ruling on admissibility under Federal Rule of Evidence 403 and 404(b)), *cert. denied*, 520 U.S. 1282 (1997); *United States v. Wright*, 102 F. App'x 972, 984 (6th Cir. 2004) (unpublished opinion) (ruling on prosecutor's remarks during closing argument).

Finally, the evidence here falls short of even the case on which the dissent principally relies. In *United States v. Moore*, 208 F.3d 411 (2d Cir.), *cert. denied*, 531 U.S. 905 (2000), two officers saw a large black and silver handgun holstered in the defendant's waistband. When the defendant fled, the officers chased him into an apartment where, "moments" later, they found a large black and silver handgun on top of some clothes in a doorless closet. *Id.* at 413. The defendant was lying in a bed (feigning sleep and with a bulletproof vest hanging from his leg) just a few feet from the closet. The defendant's aunt testified that she and her boyfriend shared the room, had never seen the gun before, and had not placed that or any other firearm in the closet. *Id.* Several factors make *Moore* a stronger case for actual possession than the instant case. The initial sighting of the gun was made by two officers rather than a single accuser; the defendant did not dispute that he possessed the firearm at the time of the initial sighting; the gun was found mere "moments" later; the officers closely tracked the defendant between the initial sighting of the firearm and its recovery; and there was evidence ruling out the room's residents as the true source of the gun. No such evidence was presented

Because the prosecution presented no evidence showing that Arnold had physical control over the recovered firearm, no rational trier of fact could have found the possession element proved beyond a reasonable doubt on the basis of actual possession.

## 2. Constructive Possession

"Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Craven*, 478 F.2d at 1333. The government may prove constructive possession by presenting evidence that the person has dominion or control over the premises where the firearm was located. *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998), *cert. denied*, 525 U.S. 1166 (1999). However, presence where a firearm was found, without more, is insufficient to establish "knowledge, power, or intention to exercise control" over the firearm. *United States v. Birmley*, 529 F.2d 103, 107-08 (6th Cir. 1976).

Our prior decisions have discussed numerous facts that, in varying combinations, served as evidence that a defendant constructively possessed a firearm found in a vehicle with him: the defendant was alone in the car, *United States v. Murphy*, 107 F.3d 1199, 1208 (6th Cir. 1997); fellow occupants were precluded as the source of the firearm, *United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004); the defendant was the owner or the driver of the car, *Birmley*, 529 F.2d at 107; another occupant of the car saw the defendant holding the firearm while in the vehicle, *Carter*, 355 F.3d at 925; *Schreane*, 331 F.3d at 560-61; *Daniel*, 134 F.3d at 1264; the police saw the defendant making movements indicative of an attempt to conceal the firearm, *Carter*, 355 F.3d at 925; *Schreane*, 331 F.3d at 561; *Daniel*, 134 F.3d at 1264; the defendant had arranged a meeting to sell the firearm, *Birmley*, 529 F.2d at 107; the firearm belonged to someone with whom the defendant had a close relationship, *Schreane*, 331 F.3d at 561; only the defendant and a close relative knew where the firearm was usually stored, *Murphy*, 107 F.3d at 1208; only the defendant had the key to the trunk where the firearm was found, *Birmley*, 529 F.2d at 107; the defendant knew of an "operational quirk" of the firearm, *Daniel*, 134 F.3d at 1264; and the defendant disclaimed knowledge of the firearm before the police disclosed its discovery, *Murphy*, 107 F.3d at 1208.

These cases stand in stark contrast to *Birmley*, where we reversed the conviction (for possession of unregistered firearms) of one of three occupants of a vehicle that had firearms in a locked trunk.[5] 529 F.2d at 105. There was no evidence of possession other than his presence as a passenger in the rear seat. *Id.* at 107. We held that "[m]ere presence on the scene plus association with illegal possessors is not enough to support a conviction for illegal possession." *Id.* In the instant case, the prosecution offered *no* evidence showing that Arnold had dominion or control over the firearm under his seat. Indeed, several facts point the other way: Arnold was not alone in the vehicle, he did not own or drive it, and he did not attempt to elude the police before or after they discovered the gun. Given the state of the evidence in the instant case, all that the government has shown is that the firearm was found under a seat in a car occupied by Arnold. *Birmley* established that this "mere presence on the scene" is insufficient to prove possession.

One might attempt to distinguish *Birmley* on the basis of the gun's location: here it was in the passenger compartment (under a seat), while in *Birmley* it was in a locked trunk for which the relevant defendant did not have a key. This is a distinction without a difference, however, because

---

here.

[5]We held that there was sufficient evidence of constructive possession as to the other two defendants. One defendant was the owner of the vehicle and had arranged a meeting to sell the firearms. *Birmley*, 529 F.2d at 107. The other defendant was in the driver's seat and had the key to the trunk in his pocket, separate from the ignition key. *Id.* at 105, 107.

it is well established that a defendant's mere presence in a car when a firearm is found under a seat does not establish possession. *See United States v. Hishaw*, 235 F.3d 565, 572 (10th Cir. 2000), *cert. denied*, 533 U.S. 908 (2001); *United States v. Chairez*, 33 F.3d 823, 825 (7th Cir. 1994); *United States v. Madkins*, 994 F.2d 540, 542 (8th Cir. 1993); *United States v. Blue*, 957 F.2d 106, 108 (4th Cir. 1992); *United States v. Soto*, 779 F.2d 558, 560 (9th Cir.), *amended on other grounds by* 793 F.2d 217 (9th Cir. 1986), *cert. denied*, 484 U.S. 833 (1987); *United States v. Whitfield*, 629 F.2d 136, 143 (D.C. Cir. 1980), *cert. denied*, 449 U.S. 1086 (1981). Courts have adopted this principle because "mere proximity of a weapon to a passenger in a car goes only to its accessibility, not to the dominion or control which must be proved to establish possession." *Soto*, 779 F.2d at 560. Because this case marks the first time we have reviewed a sufficiency claim where the prosecution's only evidence of possession is that the firearm was found under a seat in a car occupied by the defendant, it is our first opportunity to join our sister circuits in endorsing the consensus rule. We explicitly do so now: the fact that the gun was found under a seat in a vehicle occupied by Arnold does not establish possession.

This conclusion is reinforced by our decision in *Beverly*, which involved a gun found in a home.[6] An officer executing a search warrant found Beverly and another person (Austin) in the kitchen of yet another person's (Hatfield's) residence. *Beverly*, 750 F.2d at 35. While patting down Beverly and Austin, the officer noticed two handguns in a waste basket between the two individuals. *Id.* Beverly's fingerprint was on one of the guns, with the print's location suggesting that the gun "would have had to have been laid down." *Id.* at 36. We held that these facts were insufficient to prove constructive possession; instead, the evidence "establishe[d] only that Beverly was in the kitchen of Hatfield's residence, that Beverly was standing close to a waste basket which contained two guns, and that Beverly had at some point touched one of the guns." *Id.* at 37. In the instant case, Arnold and Gordon's mother were located close to where the gun was discovered, just as the defendant and his companion were in *Beverly*. Here, however, no fingerprint was found on the firearm, meaning that the evidence of constructive possession does not rise even to the level we rejected as insufficient in *Beverly*.

Finally, Gordon's statements and gestures do not change our analysis. The statements and gestures suggest that Arnold possessed a black, semiautomatic firearm at some unspecified earlier time. We reiterate that conviction requires proof that Arnold "possess[ed] the firearm and ammunition *specified in the indictment*." *Schreane*, 331 F.3d at 560 (emphasis added). The government attempts to meet this basic requirement by asking us to infer from Arnold's putative earlier possession that he constructively possessed the black, semiautomatic gun recovered from the vehicle. We decline the invitation to make such a tenuous leap. While it is true that the recovered firearm matched Gordon's generic description — statements that the brandished gun was black and gestures that an officer interpreted to indicate a semiautomatic with a chambered round — these attributes are too common for this equivalence to prove that Arnold constructively possessed the gun found in the car. *See Hishaw*, 235 F.3d at 571, 572 (holding that testimony that the defendant was seen with a semiautomatic pistol on several prior occasions was "simply too remote and too vague

---

[6]Constructive-possession decisions involving homes can inform the inquiry in cases involving vehicles. *See United States v. Cazares*, 121 F.3d 1241, 1245 (9th Cir. 1997) ("The same reasoning [used in vehicle cases] applies to occupants of a house.").

to support the inference that [the defendant] constructively possessed the pistol" found in the car).[7] Mere coincidence is no substitute for constitutionally sufficient evidence of possession.[8]

---

[7]The *Hishaw* court noted that "in certain circumstances," possession of a similar gun on prior occasions "may support an inference of constructive possession." 235 F.3d at 572. We need not define here the contours of such circumstances — if they exist at all — because Gordon's reference to a black handgun is certainly too vague to satisfy any definition, especially in light of testimony that about half of all handguns are black. (J.A. at 128.)

[8]The dissent cites numerous cases in support of its argument that Arnold constructively possessed the firearm found under the passenger seat. For various reasons, these cases do not deserve the weight that the dissent gives them.

In several cases, an officer saw the defendant both holding the firearm and throwing it away while fleeing, and the gun was recovered either where the defendant was initially encountered or along the path of his flight. *Caraway*, 411 F.3d at 680, 680-81, 683; *Barnett*, 398 F.3d at 522; *United States v. Johnson*, 55 F.3d 976, 979 (4th Cir. 1995). These cases are better understood as actual-possession decisions, but in any event, no such evidence was presented here.

In several cases, the firearm was recovered in a vehicle owned and operated by the defendant. *See United States v. Alexander*, 331 F.3d 116, 127 (D.C. Cir. 2003); *United States v. Harris*, No. 99-4759, 2000 WL 903504, at *1 (4th Cir. July 7, 2000) (unpublished opinion) (also, at trial the defendant's daughter identified the recovered firearm as one possessed previously by the defendant); *Whitfield*, 629 F.2d at 143. Arnold neither owned nor drove the vehicle in which the gun was discovered. For the same reason, we do not rely on cases in which the firearm was found in a residence owned or otherwise controlled by the defendant. *See United States v. Johnson*, No. 98-2212, 2000 WL 222572, at *4 (6th Cir. Feb. 16, 2000) (unpublished opinion) (also, the firearm was in plain view while the defendant was the only person in the house, and a witness testified that the defendant had handled the firearm); *United States v. Duso*, Nos. 92-1162, 92-1274, 92-1289, 1993 WL 131940, at *5-*6 (6th Cir. Apr. 27, 1993) (unpublished opinion) (also, a holster was hanging just outside the defendant's bedroom), *cert. denied*, 510 U.S. 883 (1993).

In several cases, an officer saw the defendant reaching toward the area in the vehicle where the firearm was found. *See United States v. Ocampo*, 890 F.2d 1363, 1366 (7th Cir. 1989); *United States v. Flenoid*, 718 F.2d 867, 868 (8th Cir. 1983); *United States v. Coe*, 718 F.2d 830, 833 (7th Cir. 1983). Arnold was not seen making any such movements.

Several other cases featured an assortment of additional evidence that is absent in the instant case. *See United States v. Banks*, No. 05-5032, 2005 WL 2508543, at *4 (6th Cir. Oct. 11, 2005) (unpublished opinion) (fellow occupants of vehicle where firearm was found confirmed victim-witness's testimony that the defendant had brandished the firearm); *United States v. Collins*, No. 96-10518, 1997 WL 599863, at *2 (9th Cir. Sept. 24, 1997) (unpublished opinion) (where possession of drugs was at issue, officer testified that (i) the defendant admitted the drugs found in the motel room were his and that the drugs had been delivered to him earlier that evening and (ii) another occupant of the room said that she and the defendant had conducted drug transactions that day); *United States v. Ratcliffe*, 550 F.2d 431, 433 (9th Cir. 1977) (where possession of drugs was at issue, the defendant bought the plane used in the drug smuggling operation and helped unload the cargo).

Finally, the remaining two cases are also distinguishable. In *United States v. Wright*, 932 F.2d 868 (10th Cir.), *cert. denied*, 502 U.S. 962, 972 (1991), the defendant was arrested at the location of a drug transaction arranged by an informant working with the police. *Id.* at 872-73. The police found a rifle hidden in a pipe about eight feet from the defendant, who was standing between his vehicle and a trailer home. *Id.* at 873. The Tenth Circuit held that there was sufficient evidence of constructive possession but provided little analysis of the issue. *See id.* at 881. The court did state, however, that the evidence was sufficient "[v]iewed in the context of the drug transaction." *Id.* By this the court likely meant the common sense of a firearm being useful as "protection or coercion" in a drug sale. *Id.* (discussing this factor in the context of conviction under § 924(c)(1) for using or carrying a firearm during and in relation to a drug trafficking offense). Moreover, the prosecution produced evidence at trial that the defendant had carried that rifle in his truck in the months leading up to the arrest. *Id.* Neither of these factors is present in the instant case.

In *United States v. Richardson*, 161 F.3d 728 (D.C. Cir. 1998), the victim-witness testified that the defendant showed him a gun, walked over to a parked car, leaned into the driver's side window, and talked to the driver. The witness left the area and returned about five minutes later. The witness told an officer who was now in the area what had occurred. A search of the defendant, who was standing ten to fifteen feet from the vehicle, revealed no firearm, but the officer did find one under the front passenger seat of the car. Although three men were seated in the driver's seat and in the rear, the front passenger seat was unoccupied. *Id.* at 732. The D.C. Circuit held that the evidence was sufficient to show constructive possession, but it "emphasize[d]" that this was not a strong case." *Id.* at 733.

In *Richardson*, there was a direct connection between the initial sighting of the firearm and its eventual discovery: the witness saw the defendant carrying a gun and leaning into a vehicle, and a few minutes later the officer recovered the firearm in the same area, inside what the witness identified as the same car. Because, immediately after brandishing a gun, the defendant had been seen leaning into the vehicle where a firearm was found a few minutes later, a rational juror could conclude beyond a reasonable doubt that the defendant had stashed his gun in the car and continued to exercise dominion and control over it.

In the instant case, however, the connection between the initial sighting and the discovery was more tenuous.

In sum, we hold that when the evidence is viewed in the light most favorable to the prosecution, no rational trier of fact could have found the possession element of § 922(g) proved beyond a reasonable doubt. "[O]nce the reviewing court has found the evidence legally insufficient, the only 'just' remedy available for that court is the direction of a judgment of acquittal." *Burks v. United States*, 437 U.S. 1, 18 (1978). Therefore, we need not address Arnold's other claims or respond to the dissent's treatment of them.[9] *See Aarons*, 718 F.2d at 189 n.1 ("The issue [of sufficiency of the evidence] being dispositive of the appeal, we do not consider the other issues raised.").

## III. CONCLUSION

For the foregoing reasons, we **REVERSE** and **REMAND** for entry of a judgment of acquittal.

---

Gordon stated in her 911 call that after Arnold threatened her with a gun, she "left, and [she] went around the corner from the house." A firearm was eventually found in a vehicle that arrived on the scene some time later. Unlike *Richardson*, nobody saw Arnold lean into or otherwise interact with Gordon's mother's car in a manner that would suggest that he was hiding a gun there. Indeed, there was no evidence that the vehicle was even in the area at the time that Arnold allegedly threatened Gordon with a gun. Given that the *Richardson* court conceded that its decision was a close one, this difference is enough to place the instant case on the insufficient side of the evidentiary line. The instant case is more like the decisions in which simply being a passenger in the vehicle where a firearm was discovered was held to be insufficient evidence of constructive possession. *See ante*, at 6-7 (citing cases). Notably, the courts that have so held include the D.C. Circuit, the court that decided *Richardson*.

[9]We note that the Supreme Court recently granted certiorari in two cases in order to determine whether statements made in a 911 call and to responding officers are "testimonial" within the meaning of *Crawford v. Washington*, 541 U.S. 36 (2004). *See Davis v. Washington*, — U.S. —, 2005 WL 1671669 (U.S. Oct. 31, 2005) (No. 05-5224); *Hammon v. Indiana*, — U.S. —, 2005 WL 1914510 (U.S. Oct. 31, 2005) (No. 05-5705).

---

**DISSENT**

---

SUTTON, Circuit Judge.  When the victim of an assault tells a 911 operator and the police that the defendant was holding a black, semiautomatic handgun, when the victim provides a motive for the defendant's possession of the gun ("he said he was going to kill her"), when the victim identifies the defendant to the police when he returns to the scene of the crime in a car shortly thereafter ("That's him, that's the guy who pulled a gun on me, Joseph Arnold, that's him."), when the victim at that point tells the police that "he's got a gun on him" and when the police then recover a black, semiautomatic handgun under the passenger seat in which the defendant is sitting, a jury may find that this evidence establishes that the defendant possessed a firearm.  As the majority concludes otherwise, I respectfully dissent.

I.

Arnold challenges the sufficiency of the evidence of just one element of this felon-in-possession-of-a-firearm charge:  Did he possess a firearm?  The jury heard several pieces of evidence  allowing it to conclude just that.  On September 19, 2002, Tamica Gordon called a 911 operator and told the operator that Arnold, her mother's boyfriend, had just threatened her with a gun.  When officers responded to the call five to six minutes later, they encountered a visibly shaken Gordon, who explained that she had just been in an argument with Arnold and that he had threatened her with a gun.  "Joseph Arnold," she told the officers, "pulled a gun on her, he said he was going to kill her.  He was arguing and she thought he was going to kill her."  JA 114.  Gordon "stated that she [ ] saw him with a gun in his hand," JA 140, and "that she observed him cock the weapon," JA 143; *see also* JA 127, 144.  Gordon described Arnold's weapon as "a black handgun."  JA 127, 140.  "[B]ecause of the way she said that he cocked it," JA 127—that he "pull[ed] back the slide," *id.*—and because of her other descriptions of the gun, the officers concluded that the gun was a semiautomatic handgun, *id.*; JA 133, and that "there would be a round chambered" in it, JA 133.


Minutes after the officers arrived, Gordon's mother pulled up in a car with Arnold sitting in the passenger seat.  "[A]s the car pulled up, [Gordon] got back excited, she started crying [and] pointing at the car saying that's him, that's the guy that pulled the gun on me, Joseph Arnold, that's him . . . . he's got a gun on him."  JA 115, 116.  Arnold "matched the description that was given [to the officers] by the dispatch," JA 141, and when the officers approached Arnold and "asked him what was going on, [ ] he basically said that they were arguing," JA 117.  The argument described by Gordon to the officers and 911 operator and confirmed by Arnold "flare[d] up" when Arnold arrived on the scene.  JA 131–32.  The officers observed Gordon "yelling at" and "passing comments" to Arnold and "him passing them back to her," causing them to conclude "they were still in an argument phase."  JA 148.  At this point, the officers discovered a plastic bag containing a loaded, black, semiautomatic handgun with a round in its chamber directly under the passenger seat of the car.  Nothing "was blocking the passenger from immediate access to the gun."  JA 122.

If we assume that the jury was entitled to consider all of this evidence, as the majority properly assumes, then the jury assuredly could conclude beyond a reasonable doubt that Arnold possessed the gun the officers found below his seat.  The jury heard evidence that Gordon, her mother and Arnold were at home that morning, that Arnold and Gordon began arguing, that during the argument Arnold retrieved a loaded gun, chambered a round and pointed it at Gordon as she fled to call 911.  They heard that Gordon described the gun to officers as a black handgun.  They heard that the way Arnold cocked the weapon indicated to the officers that it was a loaded semiautomatic and that it had a round of ammunition in it.  And the jury learned that when, moments later, a car

containing Arnold arrived back on the scene, the police found a gun inches from the passenger seat where Arnold was sitting. The gun in every way matched the description Gordon had given of it: it was black; it was semiautomatic; it was loaded; and it had a round in its chamber. And it was found within easy reach of Arnold.

Because "possession may be proved by direct or circumstantial evidence," *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973), we cannot overturn the jury's decision merely because it had to draw reasonable inferences to fill in any gaps in the evidence. True, the government did not offer direct evidence that after Arnold threatened Gordon with a gun, someone saw him take the gun, place it in a plastic bag and stick it under his seat in Gordon's mother's car. But the jury *was* told enough to know that after Gordon left the house to call 911, Arnold had the opportunity to take these steps and the jury could reasonably infer that he did. True also, the gun recovered by the police did not have Arnold's fingerprints on it. But the jury could fairly conclude that the reason the gun appeared in a plastic bag was that Arnold had just wiped his prints off the gun. *See United States v. Moore*, 208 F.3d 411, 413 (2d Cir. 2000) (upholding felon-in-possession conviction even though "no witnesses saw or heard [the defendant] throw a handgun into the bedroom closet [where officers found it], and there were no identifiable fingerprints found on the gun that was recovered" because "such evidence was not necessary for a reasonable jury to conclude that [the defendant] had been in possession of the gun that was recovered by the police" when officers testified that they had seen the defendant outside moments earlier possessing a gun of the same size and color).

As in all criminal trials, the jury did not *have* to draw these inferences. But even if the jury had not drawn these inferences but accepted all of the other uncontradicted evidence still before it, the advantage that Arnold could hope to gain still escapes me. The only other conclusion the jury could have drawn was that Arnold possessed, cocked and pointed a loaded, black, semiautomatic handgun at Gordon, disposed of it somewhere, got into a car, left and, minutes later, returned to the scene with *another* black, semiautomatic, loaded weapon with a chambered round stowed beneath his seat. That is not a traditional defense to a felon-in-possession charge. Either way, the critical point is that the jury could have drawn two sets of inferences from this uncontradicted evidence, and our mandate is to affirm when the jury's choice was a reasonable one—which it was here. *See United States v. Thomas*, 497 F.2d 1149, 1150 (6th Cir. 1974).

In reaching a different conclusion, the majority reasons that "Gordon's thrice-repeated accusation that Arnold had wielded a gun while threatening her . . . does not go to the actual possession of the firearm recovered from the vehicle at the time it was discovered." *Supra* at 4. I fail to see why. The indictment charged Arnold with possessing "a firearm, that is, a Hi Point, 9 millimeter, semiautomatic pistol." JA 14. Each and every attribute of the gun that Gordon described paralleled the attributes of the gun the officers found. Gordon saw Arnold point a handgun. The officers soon after found a handgun near Arnold. The gun Gordon saw was black. The gun the officers found was black. The gun Gordon saw was semiautomatic. The gun the officers found was semiautomatic. And Gordon saw Arnold pull back the gun's slide and chamber a round, and the gun the officers found had a round in its chamber. The only additional description the government provided of the gun specified in the indictment was that it was "a Hi Point, 9 millimeter." JA 14. No part of Gordon's description is inconsistent with these additional details, as she did not claim Arnold held another brand of gun or that it accepted another caliber round.

No doubt the connection between the two guns would have been even clearer had Gordon been able to describe some other unique characteristic of the gun or, better yet, been able to describe the gun as "a Hi Point, 9 millimeter." But Arnold has pointed to no such characteristic of the gun that Gordon could have mentioned, and surely we do not require a witness to "make out the name brand of [a] weapon, the model, the model number, []or the gun's serial number" as an aggressor points the weapon at her. *See Moore*, 208 F.3d at 413 (upholding felon-in-possession conviction even though the witnesses who saw the defendant possess a "large black and silver handgun" did

not describe the brand, model, or serial number and noting that the jury could reasonably conclude that the gun the witnesses described and the gun the police recovered "were one and the same"). Numerous cases hold that evidence not dissimilar to the evidence presented here—eyewitness testimony describing a firearm actually possessed by the defendant that matches a firearm police later charge the defendant with actually possessing—sufficiently connects the gun described to the gun found. And indeed, most of these cases involve connections far more attenuated than those here. *See, e.g.*, *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005); *United States v. Crowe*, 291 F.3d 884, 887 (6th Cir. 2002); *United States v. Chesney*, 86 F.3d 564, 567, 572–73 (6th Cir. 1996); *United States v. Black*, 525 F.2d 668, 669 (6th Cir. 1975); *United States v. Wright*, No. 03-3810, 2004 U.S. App. LEXIS 13855, at *2–4, *30–31 (6th Cir. June 28, 2004); *United States v. Smith*, No. 03-5130, 2003 U.S. App. LEXIS 21734, at *3–5 (6th Cir. Oct. 21, 2003); *Whitis v. United States*, No. 94-6333, 1995 U.S. App. LEXIS 22308, at *3, *6, *11 (6th Cir. Aug. 3, 1995); *United States v. Smith,* No. 90-2293, 1991 U.S. App. LEXIS 22429, at *7 (6th Cir. Sept. 18, 1991); *United States v. Patterson*, 23 F.3d 1239, 1242–45 (7th Cir. 1994); *United States v. Burl*, No. 00-4343, 2001 U.S. App. LEXIS 14847, at *2, *11 (7th Cir. June 13, 2001); *United States v. Brewer*, No. 00-4156, 2001 U.S. App. LEXIS 21566, at *2–3 (7th Cir. Oct. 2, 2001).

All of this, it seems to me, suffices to resolve this case. The defendant was charged with possessing a handgun, and the government proved that he actually possessed a handgun. The government has never argued that he *constructively* possessed the gun and it is quite understandable why: It had no reason to do so.

Yet even if one thinks of this prosecution as arising under a constructive-possession theory, I fail to see how that advances Arnold's cause. "Presence *alone*" near a gun, it is true, does not "show the requisite knowledge, power, or intention to exercise control over" the gun to prove constructive possession. *United States v. Birmley*, 529 F.2d 103, 107–08 (6th Cir. 1976) (emphasis added). But that is not what we have here. Here we have "other incriminating evidence, coupled with presence, . . . [that] serve[s] to tip the scale in favor of sufficiency." *Id.* at 108. And of course that "other incriminating evidence" was incriminating indeed: Minutes before the defendant was found with a handgun under the car seat in which he was riding, he was seen actually possessing a gun matching the description of the one found under his seat—and of course not just possessing it but *using* it to threaten someone. To say that this "record [was] devoid of any [ ] evidence" aside from mere presence in a car with a weapon, *United States v. Cochran*, 14 F.3d 1128, 1133 (6th Cir. 1994), gives precedent a bad name.

No case, to my knowledge, supports invalidating this conviction, and numerous cases undermine such a conclusion. *See*, *e.g.*, *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005) (rejecting a sufficiency-of-the-evidence challenge to a felon-in-possession conviction where an officer testified at trial that he saw the defendant "crouched outside [a] residence . . . holding a long black object that looked like a shotgun[,] . . . saw [the defendant] throw the object to the ground as [he] began to flee . . . [and] upon investigating the residence after [the defendant] was apprehended, [another officer] found a black and chrome rifle in the front yard"); *United States v. Banks*, No. 05-5032, 2005 WL 2508543, at *4 (6th Cir. Oct. 11, 2005) (rejecting a sufficiency-of-the-evidence challenge to a felon-in-possession conviction where a witness identified the defendant "as the individual who robbed her at gunpoint" and where soon after police met with the robbery victims they stopped a mini-van matching the description the victims provided and found a shotgun "near the seat in which [the defendant] was sitting"); *United States v. Caraway*, 411 F.3d 679, 683 (6th Cir. 2005) (rejecting a sufficiency-of-the-evidence challenge to a felon-in-possession conviction where a witness "observed an individual point a gun at him, then turn, flee over a fence and hide under an SUV" and officers "testified that the individual that was found under the SUV" shortly afterward was the defendant); *United States v. Johnson*, No. 98-2212, 2000 U.S. App. LEXIS 2475, at *13 n.3 (6th Cir. Feb. 16, 2000) (rejecting defendant's claim that the government failed to prove he possessed a firearm because "[w]hile *Cochran* stands for the proposition that mere presence on

the scene plus association with illegal possessors is not enough to establish constructive possession, there was evidence in the instant case that Johnson knew that his co-conspirator owned a firearm and brought it into the house") (citations and quotation omitted); *United States v. Duso*, Nos. 92-1162, 92-1274, 92-1289, 1993 WL 131940, at *6 (6th Cir. 1993) (rejecting a sufficiency-of-the-evidence challenge to a felon-in-possession conviction because the fact that officers found a gun under the defendant's mattress distinguished this case from *Birmley*'s "presence alone" rule and sufficed to establish constructive possession by demonstrating knowledge and intent to exercise control).

Other circuits hew to the same rule: While presence in a car with a gun does not by itself establish constructive possession, presence plus other incriminating evidence will do so. *See United States v. Alexander*, 331 F.3d 116, 127 (D.C. Cir. 2003) (rejecting a sufficiency-of-the-evidence challenge to a felon-in-possession conviction where a witness told a 911 operator and officers responding to her call that her boyfriend had a gun on him and had threatened her, the boyfriend appeared while the officers were talking with the witness and continued to fight with her and the officers discovered a gun in a car parked nearby; holding that while "mere proximity to a gun is insufficient to establish constructive possession, evidence of some other factor—including connection with a gun, proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise—coupled with proximity may suffice") (quotations and citations omitted); *United States v. Harris*, No. 99-4759, 2000 U.S. App. LEXIS 15694, at *2 (4th Cir. June 20, 2000) (rejecting a sufficiency-of-the-evidence challenge to a felon-in-possession conviction because the defendant was identified as the co-owner and driver of the vehicle in which the police discovered a revolver and "the testimony of [defendant's] daughter positively identifying the weapon as one possessed previously by her father cemented [his] possession of the firearm"); *United States v. Richardson*, 161 F.3d 728, 732 (D.C. Cir. 1998) (rejecting a sufficiency-of-the-evidence challenge to a felon-in-possession conviction where officers discovered a gun near the defendant and testimony indicated his recent prior possession of a gun with a similar handle because "proximity coupled with evidence of some other factor . . . is enough to sustain a guilty verdict") (quotations and citations omitted); *see also United States v. Collins*, No. 96-10518, 1997 U.S. App. LEXIS 26506, at *3 (9th Cir. Sept. 22, 1997); *United States v. Johnson*, 55 F.3d 976, 979 (4th Cir. 1995); *United States v. Wright*, 932 F.2d 868, 881 (10th Cir. 1991); *United States v. Ocampo*, 890 F.2d 1363 (7th Cir. 1989); *United States v. Flenoid*, 718 F.2d 867, 868–69 (8th Cir. 1983); *United States v. Coe*, 718 F.2d 830 (7th Cir. 1983); *United States v. Whitfield*, 629 F.2d 136, 143 (D.C. Cir. 1980); *United States v. Ratcliffe*, 550 F.2d 431, 434 (9th Cir. 1976).

"[I]n certain instances," to be sure, evidence of a defendant's prior possession may not support an inference of constructive possession. *United States v. Hishaw*, 235 F.3d 565, 572 (10th Cir. 2000). For example: where the defendant's "actual possession of a firearm involved incidents more than two years before the charged [ ] offense," *id*. at 573; or where the evidence did not even purport to involve the same gun that was charged in the indictment, *compare id*. at 571 (defendant charged with possessing a Norinco nine-millimeter semiautomatic pistol) *with id*. at 573 (a witness testified that "he had seen [the defendant] with some kind of firearm—either a pistol or a revolver—on about four prior occasions"); or where the evidence pertained to situations dissimilar to the situation at the time the weapon was discovered, *see id*. (witness described defendant possessing a gun during a drug transaction but officers found a gun under the passenger seat of a car driven by the defendant during a traffic stop "and no evidence was presented . . . [that defendant] was involved in [such a drug transaction] when the officers stopped the car"). Here, however, we are not dealing with evidence that pertained to events that took place two years, two days or even two hours before the officers discovered the gun under Arnold's seat. Gordon did not say she saw Arnold possess a gun in some other context; she said he possessed a gun during their argument and, minutes later, Arnold showed up and continued that argument with Gordon and, in this same context, the officers found a gun matching the description Gordon gave them. Surely, this is one of those "instances" where evidence of prior possession properly supports an inference of constructive possession. *See Richardson*, 161 F.3d at 733 (finding "the requisite connection"

between a witness's description of a gun he saw the defendant possess and a gun officers later found in a car near the defendant when the witness testified the handle of the gun officers found "was similar in appearance" to the handle of the gun he saw the defendant possess).

In the final analysis, I would hold that a rational jury could conclude that uncontradicted evidence showing that the defendant pointed a gun at the victim, that the defendant was identified as the man who pointed the gun and that a gun matching the description the victim provided was found under the defendant's car seat minutes later suffices to establish that the defendant was guilty of being a felon in possession of that gun.

## II.

Because I cannot agree with Arnold's challenge to the sufficiency of the evidence, I must also reach his objections to the district court's decision to admit Tamica Gordon's three statements—first to the 911 operator, next to the police when they arrived at the scene, then to the police when Arnold suddenly returned to the scene. Arnold challenges the district court's admission of this evidence both as a matter of evidence law (the excited-utterance exception to the hearsay rule) and constitutional law (the Confrontation Clause). As the dissent that I filed when the panel first heard this case explains my position on these contentions, I will incorporate it here by reference. *See United States v. Arnold*, 410 F.3d 895, 907 (6th Cir. 2005) (Sutton, J., dissenting); *see also United States v. Brito*, No. 04-1755, slip op. at 14–15 (1st Cir. Oct. 20, 2005); *Commonwealth v. Gonsalves*, 445 Mass. 1, 33 (2005).