IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 19, 2006

## STATE OF TENNESSEE v. HENRY A. EDMONDSON, JR.

**Appeal from the Criminal Court for Davidson County**
**No. 2004-C-1940     J. Randall Wyatt, Jr., Judge**

---

**No. M2005-01665-CCA-R3-CD - Filed July 18, 2006**

---

A Davidson County Criminal Court jury convicted the defendant, Henry A. Edmondson, Jr., of carjacking, a Class B felony. The trial court sentenced the defendant as a Range II, multiple offender to twenty years to be served in the Department of Correction. The defendant appeals, claiming (1) that the evidence was insufficient to support the verdict, (2) that the trial court erred in not granting his motion to suppress, (3) that the trial court erred in its instruction to the jury on possession, and (4) that the trial court erred in sentencing him. We conclude that although the trial court erred in charging the jury on the definition of possession, the error was harmless. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Ross E. Alderman, District Public Defender; Jeffrey A. Devasher (on appeal) and Jennifer Lichstein (at hearing), Assistant Public Defenders, for the appellant, Henry A. Edmondson, Jr.

Paul G. Summers, Attorney General and Reporter; C. Daniel Lins, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Kathy Morante, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the defendant's taking the victim's car from a Walgreens' parking lot. At the trial, Ruth Weatherford testified that on May 19, 2004, around 7:00 p.m., she went to the Walgreens at Nippers Corner. She said that she was driving her 1997 Mazda, worth $14,000, and that her dog was with her. She said she parked in front of the store by the sidewalk, got out of her car, and walked up the sidewalk. She said that when she was three cars away from her car, a man approached her and said, "Give me your money and your keys." She said that she threw her car keys and a ten-dollar bill on the ground because she was "scared really really bad" and that the man

picked them up. She said she ran into the parking lot, nearly hitting a car, and told the woman in the car to call the police. She said that she saw the defendant driving her car and that she told the woman in the parking lot to watch which way he was going. She said she went into the store where she was given a chair and something to drink because she was very upset. She said that a police officer arrived shortly thereafter and that she gave him a description of her car. She said the police officer then told her they found her car and took her to the location where her car had been stopped. She said that when they arrived at the location, she saw her car but did not want to get out of the police car because she was scared and did not want to see the suspect. She said the police officer told her she needed to get out to identify him. She said a police officer took the suspect out of a police car, and she identified him. She said there was no doubt in her mind the defendant was the man who demanded her car keys and money. She then identified the defendant in the courtroom.

On cross-examination, Ms. Weatherford acknowledged that she was on the sidewalk, that her car was turned off, that her keys were in her hand, and that she was three cars away from her car when the defendant approached her. She said the defendant picked her keys up off the ground and told her, "Give me your billfold." She said she ran into the parking lot and said, "You've got my keys and my money, you're not getting my billfold." She acknowledged the defendant never showed her a gun and never threatened her with a gun.

Metro Nashville Police Officer Brandon Dozier testified that on May 19, 2004, between 7:10 and 7:15 p.m., he responded to a robbery call at the Walgreens on Edmondson Pike. He said he reached the Walgreens a few minutes after receiving the call. He said that when he arrived at the scene, the victim was distraught. He said he talked to the victim and got a description of the suspect and the victim's car. He said he gave the information to his dispatcher, who passed it along to all dispatchers in the county. He said the victim told him the car was a light four-door Mazda Millenia and gave him the license plate number. He said that around 7:30 p.m., he received a call that the car and a suspect had been stopped near Metro Center matching the descriptions provided by the victim. He said that he told the victim the car had been found and that the victim asked if her dog was still in the car. He said another officer was able to verify the dog was in the car. He said that he took the victim to the location where the defendant had been stopped and that it took approximately fifteen to twenty minutes to drive there. He said the victim was able to make a positive identification of the defendant without any hesitation. On cross-examination, Officer Dozier acknowledged the defendant was handcuffed and in the back of a police car when he and the victim arrived at the location where the defendant had been stopped.

Metro Nashville Police Officer Mackovis Peebles, III, testified that on May 19, 2004, he heard a BOLO ("be on the lookout") for a white Mazda Millenia that had been involved in a robbery. He said he left the Criminal Justice Center and got onto I-65 North. He said he looked in his rearview mirror and saw two white Mazdas behind him. He said he asked the dispatcher to give him the description of the victim's car again. He said that he slowed down to see if the Mazda Protege would pass in order to see the license plate number and that it did pass him. He said he looked in his rearview mirror again and immediately recognized the front of the other car as a Mazda Millenia, because he owned one himself. He said he slowed down to let the car pass him, but it would not

pass him. He said the speed limit was fifty-five miles per hour, and he slowed down to forty-five miles per hour. He said the Mazda Millenia then passed him, and he saw the driver was a black male. He said that he asked his dispatcher for the license plate number and that the number matched the license plate number on the car that passed him. He said the car exited the interstate at the Metro Center Boulevard exit and turned into a housing project where the car stopped. He said he followed the car and notified his dispatcher of their location allowing backup to be sent. He said the defendant was getting out of the car when he took him into custody. He said he first saw the defendant in the car at 7:26 p.m. He said that after he took the defendant into custody, he saw a dog in the backseat of the car. On cross-examination, Officer Peebles denied that the defendant was slurring his words or that he was asleep in the back of the police car.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence contained in the record is insufficient to support a finding by a rational trier of fact that the defendant is guilty beyond a reasonable doubt of carjacking. The defendant also contends the evidence was insufficient as a matter of law to establish the elements of "taking of a motor vehicle from the possession of another." The defendant asserts the victim was not inside of, or adjacent to, her car but was three car lengths from it when the suspect approached her. The defendant argues the victim was not "in possession" of her car when the suspect demanded her car keys and money. The defendant argues that even if this court applies the constructive possession doctrine to the facts of this case, the evidence does not establish the victim constructively possessed her car when the keys were taken. The defendant asserts that at the time of the offense, the victim would have been unable to enter and drive her car immediately. The defendant argues possession of car keys should not equate to possession of the car. The defendant asserts this case differs from the robbery cases in which the constructive possession doctrine is applied, because the car was not in spatial proximity to the victim. The defendant contends the evidence, taken in a light most favorable to the state, supports a conviction of robbery. The defendant asks this court to reverse the defendant's carjacking conviction and remand the case for sentencing on the offense of robbery.

The state responds that the evidence at the trial was clearly sufficient to support the defendant's carjacking conviction. The state asserts the evidence clearly established the victim was in constructive, if not actual, possession of her car. The state contends Tennessee courts have long recognized that possession may be actual or constructive in cases of robbery, and they claim without citing authority that robbery is a lesser included offense of carjacking. The state asserts the defendant's argument that the victim was not inside of or adjacent to her car is not supported by citation to authority. The state contends that Tennessee courts have not addressed the scope of the possession requirement of the carjacking statute but that other states with similar possession requirements have not required victims to be inside of or adjacent to their cars. The state asserts the victim was in actual possession of her car because she had just left her car, was three cars away from her car, was holding her car keys, and had left her dog in the car. In the alternative, the state asserts the victim was in constructive possession of her car because it was in her presence.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence; rather, we presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility are resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

"A basic principle of statutory construction is to ascertain and give effect to legislative intent without unduly restricting or expanding the intended scope of a statute." Parks v. Tennessee Mun. League Risk Mgmt. Pool, 974 S.W.2d 677, 679 (Tenn. 1998) (citing Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995)). However, if the statutory language is ambiguous, the courts "must look to the statutory scheme as a whole, as well as legislative history, to discern its meaning." Id. If the plain meaning of a statute is applied in specific situations so as to produce an absurd or incongruous result, the intent of the General Assembly will prevail over the statutory language. See Barnett v. Barnett, 27 S.W.3d 904, 908-09 (Tenn. 2000) (citing Business Brokerage Ctr. v. Dixon, 874 S.W.2d 1, 5 (Tenn. 1994)).

When the fair import of the language of a penal statute, in the context of the legislative history and case law on the subject, still results in ambiguity, the rule of strict construction would apply to limit the statute's application to those persons or circumstances clearly described by the statute. State v. Horton, 880 S.W.2d 732, 734-35 (Tenn. Crim. App. 1994). "In other words, 'the rule of lenity is a tie-breaker when there is an otherwise-unresolved ambiguity.'" State v. Magness, 165 S.W.3d 300, 304 (Tenn. Crim. App. 2004) (quoting United States v. White, 888 F.2d 490, 497 (7th Cir. 1989)). This rule is more than one of convenience. The application of strict construction by which ambiguities in a penal statute are construed in favor of lenity "is rooted in fundamental principles of due process which mandate that no individual be forced to speculate . . . whether his conduct is prohibited." Dunn v. United States, 442 U.S. 100, 112, 99 S. Ct. 2190, 2197 (1979); accord State v. Richmond, 100 S.W.2d 1, 3 (Tenn. 1937).

Initially, the state asserts that Tennessee courts have not addressed the scope of the carjacking statute. We agree that this case presents an issue of first impression regarding the meaning of possession in the carjacking statute. We note that Tennessee courts have recognized that possession can be both actual and constructive in the context of robbery. See State v. Miller, 608 S.W.2d 158, 160 (Tenn. Crim. App. 1980) (holding that money taken from the victim's constructive possession warranted a robbery conviction). However, Tennessee courts have not determined if the possession requirement in the carjacking statute applies to both actual and constructive possession. We conclude that in order to answer the question of the proper scope of possession under the carjacking statute, we must look at how and why our General Assembly enacted the carjacking statute.

The primary purpose behind our General Assembly's enactment of the carjacking statute, codified in 1995, was to make carjacking an offense that could be prosecuted under state law instead

of being prosecuted in the federal courts under the federal carjacking statute. Before 1995, Tennessee prosecuted carjacking as either robbery, a Class C felony, if the car was taken by force or intimidation or as robbery with a deadly weapon, a Class B felony, if the car was taken by use of a weapon. See T.C.A. §§ 39-13-401, -402 (1991). The legislature wanted to abolish the difference in punishment for the two types of car robbery and wanted to create one offense for carjacking that would apply to both. House Judiciary Committee Hearing on H.B. 891, 99th Gen. Assem., 1st Sess. (Tenn. Apr. 27, 1995) (statement by Representative Herron).

The legislature wanted to punish carjacking as a Class B felony, regardless if a weapon was used, because the perpetrator "takes the car and then normally is going to cause another problem to society when they go out there driving that car." Senate Session Hearing on S.B. 1325, 99th Gen. Assem., 1st Sess. (Tenn. Apr. 27, 1995) (statement of Senator Cohen). The legislature wanted cars to be treated differently than other property, because (1) carjacking may involve taking the victim from the car and the perpetrator placing himself in the car; (2) it would deprive the victim of his or her means of transportation, movement, and freedom of access; and (3) it is often the taking of property in a situation when the perpetrator is trying to escape from a crime, thus putting members of the public in a greater degree of danger. Id.

The carjacking statute requires "the intentional or knowing taking of a motor vehicle from the possession of another by use of . . . [f]orce or intimidation." T.C.A. § 39-13-404(a) (emphasis added). The robbery statute requires "the intentional or knowing theft of property from the person of another or putting the person in fear." T.C.A. § 39-13-401(a) (emphasis added).

In construing the robbery statute, our courts have concluded that the taking must occur from the person or in the person's presence.

> The elements necessary to make out the offense of robbery are the taking must be felonious and forcible from the person of the party robbed, either actual or constructive. It is actual when the taking is immediately from the person; and constructive when in the possession or in the presence of the party robbed.

Morgan v. State, 415 S.W.2d 879, 881 (Tenn. 1967); see also State v. Howard, 693 S.W.2d 365, 368 (Tenn. Crim. App. 1985) (concluding the victim's purse that was inside the car with the victim was in the victim's constructive possession); State v. Miller, 608 S.W.2d 158, 160 (Tenn. Crim. App. 1980) (concluding money taken from the victim's apartment when the victim was restrained inside the apartment was in the victim's constructive possession).

We also note that possession of a controlled substance can be either actual or constructive. In interpreting possession as it applies to drug possession, this court has concluded a defendant can be in possession of narcotics even if not present where the drugs are located. See State v. Brown, 823 S.W.2d 576, 578-80 (Tenn. Crim. App. 1991) (concluding the defendant was in constructive possession of drugs found at a house next door to the garage where the defendant worked because

-5-

the defendant had a key to the house, had been seen going to and from the house, and was present in the garage when the house was searched); see also United States v. Coffee, 434 F.3d 887, 897 (6th Cir. 2006) (concluding the defendant possessed cocaine and marijuana that was found in a house the defendant leased even though the defendant was not present during the search that revealed the presence of the drugs).

As compared to drug possession, we believe a narrower interpretation of the word possession in the carjacking statute is required to give effect to our legislature's intent that carjacking be treated as enhanced robbery. Therefore, although the robbery and carjacking statutes use different terms to modify the object of the theft, the application of actual and constructive taking "from the person" in the robbery statute is instructive in interpreting the meaning of possession under the carjacking statute.

In this regard, we hold the word possession as used in the carjacking statute includes the taking of the car in the presence of the victim. We note this interpretation conforms to prior case law in applying this statute to myriad fact situations. See State v. Harold Holloway, Jr., No. E2004-00882-CCA-R3-CD, Hamilton County (Tenn. Crim. App. Aug. 16, 2005), app. filed (Tenn. Dec. 8, 2005) (affirming defendant's attempted carjacking conviction because the defendant attempted to take the victim's car after the victim left her car to aid someone assaulted by the defendant); State v. Johnny Darryl Williams-Bey, No. M2002-00950-CCA-R3-CD, Davidson County (Tenn. Crim. App. Aug. 21, 2003) (affirming carjacking conviction because the defendant pushed the victim into her car in a parking lot, struggled to get the keys, pushed the victim onto the ground, and drove away in the victim's car).

We note that although with varied statutory language, other jurisdictions have found carjacking must be in the presence of the victim and have upheld convictions when the car was taken in the presence of the victim or if the car was in the same vicinity as the victim. See Beaner v. United States, 845 A.2d 525 (D.C. Cir. 2004) (concluding the victim of a carjacking was in "immediate actual possession" of his car when he left his car to use a payphone, left the car running with the doors open, and was three feet away from the car); Price v. State, 681 A.2d 1206, 1212 (Md. Ct. App. 1996) (concluding "actual possession" in carjacking statute requires only that the victim "be entering, alighting from, or otherwise in the immediate vicinity when an individual obtains unauthorized possession or control of the vehicle"); but see State v. Jenkins, 728 A.2d 293, 296-97 (N.J. Super. Ct. App. Div. 1999) (holding the taking of keys from a victim was not carjacking under the statute requiring the victim be "an occupant or person in control," because the record failed to show where the car was parked relative to the gravesite the victim was visiting).

In the present case, the evidence in the light most favorable to the state showed that the victim was "three cars away" from her car when the defendant confronted her and demanded her car keys and money. The victim, in a state of fear, dropped the keys and money and ran into the parking lot where she summoned for help. The defendant picked up the car keys and money, entered the victim's car, and drove away. We conclude under these circumstances that the defendant took the car from the victim's possession.

## II. MOTION TO SUPPRESS

The defendant contends that the trial court erred in denying the defendant's motion to suppress the identification testimony of the victim due to unnecessarily suggestive pretrial identification procedures. The defendant argues the identification procedures used by the police deprived him of his rights to a fair trial and due process of law in violation of the United States and Tennessee Constitutions. The defendant contends a review of the five factors in Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375 (1972), should compel this court to conclude that the defendant's due process rights were violated. The defendant asserts that the victim's encounter with the defendant was "pretty quick," that the victim's opportunity to view the assailant was limited, that the witness only described the defendant as a black man with long "porkchop" sideburns, that the victim's purported certainty in her identification of the defendant is expected given the nature of the showup, that imperative circumstances did not necessitate a showup, and that the showup did not occur as an on-the-scene investigatory procedure.

The state responds that the trial court correctly ruled that the showup identification was admissible because it did not violate due process. The state argues that the defendant's assertion that the showup was suggestive enough to violate due process is refuted by the record. The state asserts that the victim had a clear opportunity to view the defendant at the time of the crime, that nothing in the record shows that the victim was paying anything but a high degree of attention to the defendant, that the victim's description of the defendant as a black male was accurate, that the record does not reflect the victim's description of the defendant's sideburns was inaccurate, and that the victim had no doubt the defendant was the man who committed the offense.

At the motion to suppress hearing, Ms. Weatherford testified that on May 19, 2004, around 7:00 p.m., she was at the Walgreens on Edmondson Pike. She said a man came up to her and demanded her car keys and money. She said she told Officer Dozier her white 1997 Mazda had been taken. She said that while Officer Dozier was gathering information from her and other people at the Walgreens, he received a radio call. She stated all of these events occurred within minutes. She said that Officer Dozier then took her to a new location and that she saw her car with police cars around it. She said that the officers took the defendant out of a police car and that she was able to identify him. She said it was a matter of minutes to get from the Walgreens to her car's location at Metro Center. She said there was no question "whatsoever" the man she identified was the man that had taken her car.

On cross-examination, Ms. Weatherford acknowledged she first gave a description of her car and the suspect to Officer Dozier when he arrived at the Walgreens. She said she told him the suspect was a black man with "porkchop" sideburns. She said she heard over Officer Dozier's radio that the police had found her car. She acknowledged she had never seen the suspect before that day. She said that the interaction she had with the suspect was "pretty quick" and that she was concerned with getting away from him as quickly as possible. She said it was daylight when the offense occurred. She acknowledged that the defendant was in handcuffs when the police took him out of the police car and that no one else was in the police car.

At the hearing, Officer Dozier testified that on May 19, 2004, between 7:10 to 7:15 p.m., he received a call to respond to the Walgreens on Edmondson Pike. He said that he used his siren and blue lights to get to the store and that it did not take him long to get there. He said that he talked to the victim and that he gave the description of the victim's car, the license plate number, and the description of the suspect to his dispatcher, who then gave the information to other dispatchers. He said twenty minutes passed between the time the victim had her belongings taken and the time the defendant was taken into custody. He said that within two or three minutes of being notified the defendant was in custody, he transported the victim to the location where the defendant was taken into custody. He said it took approximately fifteen minutes for them to get from the Walgreens to the defendant's location. He said that the victim identified the defendant and that the defendant was the only suspect taken out of the police car.

On cross-examination, Officer Dozier testified that the incident took place at a point close in time to the arrest, making conditions favorable for a showup. He acknowledged there was no reason he could not have transported the defendant downtown and conducted a lineup.

The trial court denied the defendant's motion to suppress, finding this was a permissible showup. The trial court found that

> Officer Dozier took Ms. Weatherford to the scene. I'm sure common sense would tell you that she learned somewhere in that process that her car had been stopped. . . . [B]ut, I don't find that . . . Officer Dozier told her that we've got the man, this, this and that. He just took her there to the scene. The man got out of the car, she got out of the car and she identified the man. . . . I don't think common sense applying would say that anything could have been done- -done much better than the way this was handled.

A trial court's factual findings in a motion to suppress hearing are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Odom, 928 S.W.2d at 23. The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). The application of the law to the facts as determined by the trial court is a question of law that is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997). Because the trial court's findings came from its application of the law to the facts, we will review the trial court's findings de novo.

An identification procedure violates due process if it is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968). A showup is a type of identification procedure that

is inherently suggestive. State v. Thomas, 780 S.W.2d 379, 381 (Tenn. Crim. App. 1989). Identifying a suspect of a crime in a showup procedure has been condemned repeatedly unless (1) imperative circumstances necessitate the showup, or (2) the showup occurs as part of an on-the-scene investigatory procedure shortly after the crime is committed. Id.

Although a showup may be suggestive, the identification may satisfy due process as reliable and admissible under the totality of the circumstances. State v. Brown, 795 S.W.2d 689, 694 (Tenn. Crim. App. 1990). This court must consider five factors in determining if an identification is reliable and thus admissible: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. State v. Strickland, 885 S.W.2d 85, 88 (Tenn. Crim. App. 1993) (citing Neil, 409 U.S. at 199-200, 93 S. Ct. at 382).

The five factors support a conclusion that the identification of the defendant was reliable and admissible. The evidence showed the victim had ample opportunity to view the defendant. The defendant approached the victim, demanded her car keys and money, picked up the items from the ground, and demanded more money. The victim responded, "You are not getting my wallet" and watched the defendant enter her car and drive it from the parking lot. The record does not show that the victim was distracted or that her attention was not focused on the defendant. The record also does not show the victim's prior description of the defendant was inaccurate. The victim reported the suspect was a black male with long "porkchop" sideburns. The victim was sure of her identification of the defendant as the perpetrator. Only twenty minutes passed between the crime and the arrest of the defendant. The victim was immediately taken to the location of the defendant's arrest and identified the defendant less than one hour after the crime had been committed. See State v. Robert L. Drew, No. M2000-01853-CCA-R3-CD, Davidson County, slip op. at 4 (Tenn. Crim. App. Sept. 7, 2001) (concluding showup satisfied due process when the witness identified the defendant within "a couple of hours" after the crime occurred). We conclude that under the totality of the circumstances the showup was reliable and that the trial court did not err in denying the defendant's motion to suppress. The defendant is not entitled to relief on this issue.

### III. JURY INSTRUCTIONS

The defendant contends the trial court erred in instructing the jury on the concept of constructive possession pursuant to the state's special request. The defendant asserts the trial court instructed the jury on the concept of constructive possession as it applies to drug possession cases. The defendant contends the term "possession" as used in the carjacking statute means actual possession. The defendant argues that unless carjacking is limited to those instances when the victim is in actual possession of his or her vehicle, any robbery when car keys are taken would be a carjacking.

The state responds that the trial court correctly instructed the jury regarding the law of possession. The state contends that Tennessee courts have long recognized that possession may be

actual or constructive in cases of robbery, and they claim without citation to authority that robbery is a lesser included offense of carjacking. The state also contends the instruction was a correct statement of the law and patterned after an already-existing jury instruction. The state argues that the legislature did not impose an "actual possession" requirement because the statute only requires "possession" and that the defendant has failed to show possession in the carjacking statute should be read to mean only actual possession.

The instruction at issue was taken from the Tennessee Pattern Jury Instruction section on controlled substances. The trial court instructed the jury that

> Possession may be actual or constructive. A person who knowingly had direct physical control over an object at a given time is then in actual possession of it. A person who, although not in actual possession, knowingly had both the power and intention at any given time to exercise dominion and control over an object is then in constructive possession of it.

The trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see also Tenn. R. Crim. P. 30. The trial court must describe each element of an offense and define the element in connection with that offense. See State v. Cravens, 764 S.W.2d 754, 756 (Tenn. 1989). A charge is prejudicial error if it fails to "submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997). A defendant has a constitutional right to a correct and complete charge of the law. State v. Forbes, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995).

The instruction used by the trial court was the pattern jury instruction for the possession of controlled substances. A person in constructive possession of a controlled substance needs only to have "'the power and intention at a given time to exercise dominion and control over . . . the drugs either directly or through others.'" State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001) (quoting State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). A person can be in constructive possession of a controlled substance who is not near or in close proximity to the controlled substances. See Coffee, 434 F.3d at 897 (concluding the defendant possessed cocaine and marijuana that was found in a house the defendant leased even though the defendant was not present during the search that revealed the presence of the drugs); Brown, 823 S.W.2d at 578-80 (concluding the defendant was in constructive possession of drugs found at a house next door to the garage where the defendant worked because the defendant had a key to the house, had been seen going to and from the house, and was present in the garage when the house was searched); State v. Alvin Ray Hicks, No. 03C01-9203-CR-97, Cocke County, slip op. at 11 (Tenn. Crim. App. May 11, 1993) (concluding the defendant had constructive possession of cocaine found "125-150 feet from the appellant's residence" underneath a tree, even though the defendant had already been arrested and removed from his home on an unrelated charge).

-10-

We believe it was error for the trial court to give an instruction on possession that contemplates constructive possession even if a person is not near or in close proximity to the item. However, we conclude the error was harmless beyond a reasonable doubt. The record reveals that the victim was only "three cars away" from her car. Thus, the car was taken from the victim's presence. As we concluded above, the taking of the car from the victim's presence was sufficient to establish the car was in the victim's possession. The defendant is not entitled to relief on this issue.

## IV. SENTENCING

The defendant contends that the trial court erred in imposing the maximum sentence allowable by law on the defendant's conviction for carjacking. The defendant does not dispute that he has a history of criminal convictions but asserts that this enhancement factor, alone, does not justify the maximum sentence. The defendant contends the trial court should have applied at least two statutory mitigating factors: (1) the defendant's conduct did not cause or threaten serious bodily injury and (13) the defendant had a troubled childhood, history of mental illness, longtime drug addiction, and was remorseful. See T.C.A. § 40-35-113 (1), (13). The defendant asserts he never touched the victim, did not threaten her verbally, and did not use a weapon.

The state contends that the trial court correctly applied enhancement and mitigating factors to the defendant's sentence. The state asserts that the trial court considered the defendant's proposed mitigating factors of a troubled childhood and lack of serious bodily injury and that the record supports the court's determination to give them little or no weight. The state argues that the defendant had a general lack of remorse that is reflected in the fact the defendant had approximately twenty prior convictions, that he violated probation or parole on five different occasions, and that he was removed from the Drug Court program. The state also asserts that although the trial court did not directly address remorse as a mitigating factor, the trial court acknowledged positive factors about the defendant but determined the defendant's criminal history outweighed any mitigating factors.

At the sentencing hearing, the parties agreed the defendant was a Range II, multiple offender. Ms. Weatherford testified that the offense occurred near her home and that she was going to be moving because of this crime. She said she would not go out at night because she felt unsafe everywhere she went. She said, "I mean, to feel free in our society walking down the street, you take for granted. And, now, I don't have that privilege."

The defendant testified that he was under the influence of drugs when he committed the offense. He said that he was thirty-six years old and that he became addicted to drugs when he was twenty. He said that he was eight years old when his mother was murdered and that his father was killed a few years earlier. He said he had done construction work, worked at fast food restaurants, and helped out at home. He said he regretted how his incarceration had affected his family. He said that he was sorry for what happened and that he did not mean to cause the victim any harm. He asked the court to have leniency on him.

-11-

On cross-examination, the defendant acknowledged he had five felony convictions and twelve misdemeanor convictions. He acknowledged he had been on probation in the past. He acknowledged that he had been using cocaine on a daily basis and that he had been removed from the Drug Court Program.

Annie Frezzell testified that she was the defendant's grandmother and that she had a close relationship with him. She said the defendant was always nice to her and visited her. She said she had never seen the defendant be violent or get into any fights. She asked the court to be lenient.

Ester Brown testified that she was the defendant's cousin and that she raised the defendant since he was eight years old. She said the defendant lived with different family members when he was younger and switched schools often. She said the defendant never received any psychological treatment after his mother was murdered. She said the defendant had attention deficit disorder and had been enrolled in special education classes since the third grade. She said the defendant was sexually abused as a child before his mother died. She said the defendant was truthful and always accepted the consequences of his actions. She said she was concerned about the defendant's emotional stability if he had to serve an extended sentence.

The state entered the defendant's presentence report as an exhibit at the hearing. The report reflects that the defendant has prior convictions including four burglary convictions, one evading arrest conviction, six criminal trespassing convictions, five theft convictions, three possession of drug paraphernalia convictions, and one forgery conviction. The report also reflects the defendant dropped out of high school in the tenth grade. It reflects that the defendant has a history of drug use and that he was using cocaine on a daily basis when this offense occurred. The defendant was removed from the Drug Court program in 2003. The defendant's employment history lists one job at Nashville Linens for five months but states the defendant had a short work history because he had been in and out of prison.

The trial court found that enhancement factor (2), the defendant had a previous history of criminal convictions or criminal behavior, applied in this case. See T.C.A. § 40-35-114(2) (2003).[1] The trial court found that mitigating factor (1), the defendant's criminal conduct did not cause or threaten serious bodily injury, did not apply. See T.C.A. § 40-35-113(1). The trial court also declined to give any weight to the mitigating factors that the defendant had a troubled childhood and was remorseful. See T.C.A. § 40-35-113(13). The trial court found the defendant had a significant prior record of felony theft, burglary, aggravated burglary, criminal trespassing, drug offenses, and evading arrest. The trial court considered the mitigating factors but found "there are very little, if any, mitigating factors" and gave them no weight. The trial court sentenced the defendant to twenty years, the maximum for a Range II, multiple offender.

---

[1]We note that on June 7, 2005, the General Assembly amended Tennessee Code Annotated sections 40-35-102, -114, -210, and -401. See Tenn. Pub. Acts ch. 353, §§ 1, 5, 6, 8. However, the amended code sections are inapplicable to the defendant's appeal

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2003). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of facts that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result was preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this regard, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Martin, 146 S.W.3d 64, 69 (Tenn. 2004). In conducting a de novo review, we must also consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2003); see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

The range of punishment for a Range II, Class B felony is twelve to twenty years. T.C.A. § 40-35-112(b)(2). Applicable to this case, unless there are enhancement factors present, the presumptive sentence to be imposed is the minimum in the range for a Class B felony. T.C.A. § 40-35-210(c) (2003). Our sentencing act provides that procedurally, the trial court is to increase each sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. T.C.A. § 40-35-210(d), (e) (2003). The weight to be afforded an existing factor is left to the trial court's discretion as long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. T.C.A. § 40-35-210 (2003), Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

At the sentencing hearing, the defendant conceded the fact that he has an extensive record. The presentence report reflects the defendant had four burglary convictions, one evading arrest conviction, six criminal trespassing convictions, five theft convictions, three possession of drug

paraphernalia convictions, and one forgery conviction. The record supports the application of enhancement factor (2): "defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." T.C.A. § 40-35-114(2) (2003). The trial court considered the mitigating factors but found "there are very little, if any, mitigating factors." The trial court stated that the defendant's conduct did threaten serious bodily injury and that the victim was "very seriously terrorized and traumatized and . . . it's lucky in her physical condition . . . that she was able to not be more harmed than she was." The trial court acknowledged the troubled childhood and hard life the defendant had experienced but found it was not a mitigating factor. The trial court did not specifically address the defendant's remorse as a mitigating factor. However, the trial court did comment on the fact the defendant had had "plenty of time with the help of good people" to try to change his lifestyle but had failed to take advantage of the help. We conclude the defendant's remorse is not a mitigating factor in this case. See T.C.A. § 40-35-113(13). We also conclude the record supports the trial court's finding that enhancement factor (2) applies and that mitigating factors (1) and (13) do not apply. The defendant is not entitled to relief on this issue.

## CONCLUSION

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE

-14-