*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0030p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 04-1758

JOHN JOSEPH COFFEE, JR.,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-80165—Nancy G. Edmunds, District Judge.

Submitted: December 1, 2005

Decided and Filed: January 20, 2006

Before: SILER and GRIFFIN, Circuit Judges; KATZ, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** Stuart W. Harris, KEGLER, BROWN, HILL & RITTER, Columbus, Ohio, for Appellant. Elizabeth A. Stafford, UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

## OPINION

---

GRIFFIN, Circuit Judge. Defendant John Joseph Coffee, Jr., was convicted by a jury of possession with intent to distribute marijuana and cocaine base, in violation of 21 U.S.C. § 841(a)(1), and of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court denied defendant's motion for judgment of acquittal pursuant to FED. R. CRIM. P. 29. Defendant now appeals, alleging that (1) the district court erred in denying his motion to suppress evidence because the search warrant for the premises was issued without probable cause, (2) the evidence was insufficient for a rational trier of fact to find defendant guilty beyond a reasonable doubt, and (3) he is entitled to resentencing under *United States v. Booker*, 125 S. Ct. 738 (2005). For the reasons set forth below, we affirm defendant's convictions, but vacate defendant's sentences and remand for resentencing in light of *Booker*.

---

[*]The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

1

I.

Defendant's convictions arose out of the January 30, 2003, search of a home which defendant rented at 26868 Penn, Inkster, Michigan. On that date, law enforcement officers from the Metro Street Enforcement Team ("MSET") executed a search warrant for the above address. Following the search, defendant fled to Illinois, where he stayed until his arrest in June 2003.

The circumstances leading to the search of the above address were described at trial by the MSET officers. On January 29, 2003, the MSET organized and executed a controlled purchase of cocaine base from 26868 Penn with the assistance of a confidential informant ("CI"). The officers had received information from the CI that a male known as "J" sold narcotics out of that house. Prior to the purchase, MSET Officer Shawn Adams searched the CI to make sure that he did not have any narcotics or currency on his person and then gave the CI $20 in U.S. currency. The MSET officers then watched as the CI approached 26868 Penn and entered the house. The CI was wearing a transmitter; thus, the officers were able to hear the CI's conversation with the seller and the voices of children in the background. Officer Adams and another MSET officer testified that defendant's voice matched that of the person who sold the cocaine to the CI. When the CI exited the house, he was accompanied by defendant, who then entered a vehicle and left the area. The officers followed the CI to a prearranged location, where the informant handed over .3 grams of a substance which field-tested positive for cocaine base.

On the next day, January 30, 2003, Officer Adams secured a search warrant for 26868 Penn and the search was carried out that same day. Officer Adams, accompanied by five other officers and a drug detection dog, knocked on the door and announced their presence, but found no one in the house. The dog indicated the presence of narcotics in a Crown Royal bag on a television stand in the northwest bedroom of the house. The bag contained twenty-eight packages of marijuana, totaling thirty-two grams. A further search of the closet in the northwest bedroom revealed an electronic scale, a .22 caliber rifle and a box of .22 caliber bullets, and two loaded revolvers located in the pockets of work shirts in the closet. One of the shirts was embroidered with the name "John," and the other was labeled "Coffee." In addition, officers found numerous documents, including bills and court documents, bearing defendant's name and address, in a file cabinet in the closet. A collage of photographs displaying pictures of defendant, his children, and other close family members was also noted in the northwest bedroom.

The dog indicated the presence of narcotics in some blinds in the northeast bathroom, and eight individual bags of cocaine base, totaling 7.6 grams, were found in the top bracket of the window blind.

At trial, defendant presented several witnesses in his defense. Defendant did not dispute that he rented the residence at 26868 Penn in Inkster; however, through the testimony of his witnesses, he attempted to show that he was not in Michigan in January 2003, but in fact had moved to Freeport, Illinois, well before the January 30th search, and that several other individuals resided or were present at 26868 Penn on the dates in question.

On January 23, 2004, the jury convicted defendant of the charged offenses. On May 17, 2004, the district court sentenced defendant to ninety-seven months' imprisonment on each count, to be served concurrently. Defendant now timely appeals.

II.

Defendant first contends that the district court erred in denying his motion to suppress evidence seized during the search of his residence. He asserts that Officer Adams' affidavit submitted in support of the search warrant is deficient in several material respects; specifically, it purportedly fails to adequately establish the veracity or reliability of the unnamed CI and does not

sufficiently corroborate the CI's allegations of illegal activity so as to provide the requisite probable cause for issuance of the search warrant.

When reviewing a district court's ruling on a motion to suppress, we will reverse findings of fact only if they are clearly erroneous. *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir. 2003). "[L]egal conclusions as to the existence of probable cause are reviewed de novo." *United States v. Combs*, 369 F.3d 925, 937 (6th Cir. 2004) (citation omitted). "When the district court has denied the motion to suppress, we review all evidence in a light most favorable to the Government." *Galloway,* 316 F.3d at 628 (citation omitted).

The Fourth Amendment provides that "no warrants shall issue but upon probable cause, supported by oath or affirmation . . . ." U.S. CONST. amend. IV. Probable cause arises if there are "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion," *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (citation omitted), and "[i]n order for a judicial officer to issue a warrant, law enforcement officials must present evidence from which the magistrate judge can conclude from the totality of the circumstances, 'including the "veracity" and "basis" of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Search warrant affidavits must be judged based on the totality of the circumstances, rather than line-by-line scrutiny. *United States v. Woosley,* 361 F.3d 924, 926 (6th Cir. 2004); *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001). In this regard, affidavits for search warrants:

> Must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

*United States v. Ventresca*, 380 U.S. 102, 108 (1965).

Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). A magistrate judge's determination of probable cause should be paid great deference by a reviewing court. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc). Thus, "an issuing magistrate's discretion should only be reversed if it was arbitrarily exercised." *Id.*

Where, as here, the bulk of the information in the affidavit comes from a confidential source, a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances analysis. *Frazier*, 423 F.3d at 532. "While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, . . . in the absence of any indicia of the informant[s'] reliability, courts insist that the affidavit contain substantial independent police corroboration." *Id.* (citations omitted). "As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause." *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005). An affidavit is sufficient "where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, [such that] a neutral and detached magistrate *may* believe that evidence of a crime will be found." *Allen*, 211 F.3d at 976. As we recently explained in *McCraven*,

> Under *Allen*, while an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular

form.   See [*Allen*, 211 F.3d] at 975-76.   The affidavit could state that police corroborated significant parts of the informant's story.   Or the affiant could attest "with some detail" that the informant provided reliable information in the past.  *Id.* at 976.   Or there could be other indicia of the informant's reliability, such as a detailed description of what the informant observed first-hand, or the willingness of the informant to reveal his or her name.   As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause.

401 F.3d at 697.

In sum, "an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information." *Woosley*, 361 F.3d at 927; *see also United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000) (noting that "information received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information").

In the case at hand, the affidavit submitted by Officer Adams set forth in detail his law enforcement experience and his familiarity with the methods of use, sales, and distribution of controlled substances in the drug trafficking trade.   The affidavit gave a physical description of the house at 26868 Penn and, with regard to the investigation at issue, stated in pertinent part as follows:

> 2.  C.I. PG-075 [confidential informant] has made several narcotic purchases from the above location [specified as 26868 Penn, Inkster, Michigan].   Within the last forty-eight hours Officer Adams met with Pg-075 at a pre-arranged location.   Pg-075 was searched for any controlled substances or U.S. currency with none being found.   Pg-075 was then issued official MSET pre-recorded funds and followed directly to the above location (26868 Penn, Inkster, MI 48141).   Pg-075 was going to purchase narcotics from the location.   Pg-075 was observed entering the residence.   A short time later Pg-075 was observed exiting the residence and was followed to a pre-arranged location.   Pg-075 met Officer Adams at the pre-arranged location and turned over a suspected rock of crack cocaine.   Pg-075 stated that the rock of crack cocaine was purchased from inside the location and the rock was purchased from Jason, also known as Jay.   Pg-075 has purchased narcotics from Jason several times in the past.   Pg-075 stated that Jason was given official MSET funds in exchange for the crack cocaine.   Pg-075 was again searched for any controlled substances and or U.S. currency with none being found.
>
> 3.  The evidence was taken to the MSET office where it was field tested by Officer Adams with a positive result for crack cocaine.
>
> 4.  The affiant feels that based on the facts and circumstances above and the affiant['s] prior experience that a search of the listed above location will reveal narcotics, evidence of narcotic trafficking, or any of the other items listed to be searched for.
>
> 5.  It is the experience of the affiant that persons in the trafficking of narcotics often keep firearms present for the protection of such activity.

The search warrant was issued by the magistrate on the basis of the above information and the search of 26868 Penn was carried out on the day after the controlled narcotics purchase.   The district court concluded that, although there were no statements in the affidavit about the reliability of the CI, Officer Adams' statements that he set up the controlled buy and took necessary

precautions before and after the orchestrated purchase adequately corroborated the CI's information and, thus, provided sufficient probable cause for the issuance of the search warrant.

Contrary to defendant's assertion, the present circumstances are not analogous to *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005), in which we concluded that the search warrant lacked probable cause because it "failed to make any connection between the residence to be searched and the facts of criminal activity that the officer set out in his affidavit" and "also failed to indicate any connection between the defendant and the address given or between the defendant and any of the criminal activity that occurred there." No similar deficiency is present in the affidavit in this case.

Here, the details of the controlled purchase, and its connection to 26868 Penn, were spelled out in the affidavit. Officer Adams indicated that the CI "has made several purchases from" 26868 Penn. He further described the controlled purchase that he organized to corroborate the informant's information. The CI's basis of knowledge was his direct purchase of narcotics from defendant; the purchase was controlled and witnessed by Officer Adams, who searched the CI for money or contraband, provided the CI with pre-recorded funds, observed the CI enter and exit defendant's house, and then observed and tested the crack cocaine the CI purchased from defendant. Under the totality of the circumstances, Officer Adams' affidavit adequately corroborated the CI's information in this case and did so in a manner endorsed by this circuit in *United States v. Pinson*, 321 F.3d 558 (6th Cir. 2003), wherein we held that the affidavit at issue showed probable cause because:

> The affidavit stated that the confidential informant was familiar with cocaine from "past experience and exposure" and that he had provided information to the police in the past which resulted "in the lawful recovery of narcotics." Furthermore, the confidential informant's basis of knowledge of the criminal activity was that he had personally purchased cocaine at 2713 Torbett Street. Unlike *Allen*, where there was no corroboration of the informant's purchase of drugs, the affidavit in this case contained Officer Mackall's personal observation, his pat down of the informant before and after the purchase of the narcotics, and the fact that the drugs purchased by the confidential informant were later tested positive for cocaine base. All of this information was clearly stated in the affidavit, and the affidavit meets the *Allen* test.

*Pinson*, 321 F.3d at 563.

Although here, unlike *Pinson*, Adams' affidavit contains no averments that the informant was reliable based on prior contacts, the affidavit does state that the CI had made several purchases in the past from "Jay" at the specified address. The affidavit also contains substantial independent police corroboration because it details the circumstances of the controlled purchase of the cocaine base. Thus, as the district court properly determined, a magistrate could conclude, based on the totality of the circumstances described in Officer Adams' affidavit, that there was a fair probability that contraband or evidence of a crime would be found at 26868 Penn. *Williams*, 224 F.3d at 532. Accordingly, the warrant issued for defendant's rented premises was supported by probable cause.

### III.

Defendant next maintains that the district court erred in denying his motion for judgment of acquittal under FED. R. CRIM. P. 29. In reviewing a district court's denial of a motion for judgment of acquittal on a claim of insufficient evidence, the pertinent inquiry is "'whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Lloyd,* 10 F.3d 1197, 1210 (6th Cir. 1993) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). However, if the evidence "is such that a rational factfinder must conclude that a reasonable doubt is raised, this

court is obligated to reverse a denial of an acquittal motion." *Id.* The district court's findings of fact are reviewed for clear error, and circumstantial evidence alone is sufficient to sustain a conviction. *Id.* "In reviewing the denial of a motion for acquittal, we must 'refrain from independently judging the credibility of witnesses or [the] weight of the evidence.'" *United States v. Beverly*, 369 F.3d 516, 532 (6th Cir. 2004) (quoting *United States v. Walls*, 293 F.3d 959, 967 (6th Cir. 2002)). All reasonable inferences are to be drawn in the government's favor. *Id.*

In order to sustain a conviction for felon in possession of a firearm, the government must prove: (1) that the defendant had a prior felony conviction; (2) that the defendant knowingly possessed the firearm, either actually or constructively; and (3) that the firearm had traveled in interstate commerce. 18 U.S.C. § 922(g)(1); *United States v. Caraway*, 411 F.3d 679, 682 (6th Cir. 2005). Here, defendant challenges only the sufficiency of the evidence regarding the element of possession. He contends that other persons occupied the house and there is insufficient evidence linking him to the firearms.

"Evidence of either actual or constructive possession of a firearm is sufficient to sustain the verdict." *United States v. Arnold*, — F.3d — , 2005 WL 3315297, at *2 (6th Cir. Nov. 23, 2005) (citation omitted). The government advanced its case against defendant based on a theory of constructive possession, which exists "when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973). Constructive possession may be proved by direct or circumstantial evidence and it is not necessary that such evidence remove every reasonable hypothesis except that of guilt. *Id.* "Proof that 'the person has dominion over the premises where the firearm is located' is sufficient to establish constructive possession." *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) (quoting *United States v. Clemis*, 11 F.3d 597, 601 (6th Cir. 1993)). "However, presence where a firearm was found, without more, is insufficient to establish 'knowledge, power, or intention to exercise control' over the firearm." *Arnold*, 2005 WL 3315297 at *4 (quoting *United States v. Birmley*, 529 F.2d 103, 107-08 (6th Cir. 1976)).

Defendant's landlord, Mack Hall, testified that defendant and his friend, Casey Powell, were the only two adults listed on the lease at 26868 Penn. Powell was not on the original lease, which began in October 1999, but she was added at a later date and provided the requisite notice to Hall. At trial, Powell testified that, although she spent time at the house, she never actually moved in; rather, she resided in Canton, Michigan.

Mack Hall further testified that defendant's brother sporadically stayed at 26868 Penn for a few days at a time. However, defendant's mother, Melody Coffee, testified that defendant's brother lived with her in January 2003 on the dates in question. She confirmed that defendant's children lived at 26868 Penn with him, but they were ages five, six, and seven at the time of trial. The only other adult alleged to have been a resident at 26868 Penn was a person named Ernest Goodwin; Melody Coffee claimed that Goodwin was defendant's roommate off and on for a few years.

The jury evidently chose to disbelieve Melody Coffee's testimony that defendant went to Freeport, Illinois, in September 2002 and stayed until December 2002, that he never stayed at 26868 Penn when he briefly visited in December 2002, and that he returned to Freeport in early January 2003, and, instead, credited the testimony of the landlord that defendant was the only full-time resident at 26868 Penn and did not vacate that address until after the search.[1] Based on the evidence

---

[1] According to Hall, on January 30, 2003, neighbors on Penn notified him that a search had occurred at his house that day. Consequently, Hall paged defendant, who returned the call the following day. Defendant told Hall that "someone had sold some drugs to someone . . . in the house, and that he [defendant] was not going to return back to the

of record, the jury had a rational basis for concluding that defendant was the only adult resident occupying 26868 Penn on the dates in question.

Additionally, there was ample evidence that defendant constructively possessed the firearms found at 26868 Penn. Ms. Powell, defendant's co-lessee, denied that the firearms belonged to her. According to Officer Adams, Powell informed him on the date of the search that the firearms, which she believed to be BB guns, belonged to defendant. Moreover, all of the firearms were found in a closet in the northwest bedroom which was filled exclusively with defendant's belongings. Indeed, the two revolvers were found in shirt pockets bearing defendant's name.

In *Craven*, we held that constructive possession of firearms discovered throughout the house was established where the defendant clearly exercised constructive possession of the house, one of the guns was found in the master bedroom in which monogrammed men's shirts bearing the defendant's initials were found, the defendant was placed in this room by testimony of a witness, and the defendant made statements that he collected guns. *Craven*, 478 F.2d at 1333-34.

Similarly, in the case at hand, drawing all reasonable inferences in favor of the government, there was sufficient evidence for a rational trier of fact to conclude that at the time of the search, defendant had dominion over the house where the firearms were located. The fact that no identifiable fingerprints were found on either of the revolvers is not determinative, particularly in light of the testimony of the government's expert witness, a representative from the Michigan State Police Latent Print Unit, that fingerprints are rarely identified on firearms, the absence of fingerprints does not mean that an item has not been touched, and mechanics' cracked and gouged hands (defendant was a mechanic) are less likely than those of members of other professions to leave fingerprints.

Defendant also maintains that there was insufficient evidence to support his drug conviction. The elements of a charge of possession with intent to distribute illegal drugs are: (1) the defendant knowingly, (2) possessed a controlled substance, (3) with intent to distribute. *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995) (citing *United States v. Peters*, 15 F.3d 540, 544 (6th Cir. 1994)). Defendant alleges that the government failed to prove that he possessed the crack cocaine and marijuana, or that he intended to distribute those substances. We disagree.

In addition to the evidence, noted above, that defendant was the only adult living at 26868 Penn, the MSET officers testified that they observed defendant walking out of the house with the CI after the controlled buy. Officer Adams further testified that defendant's voice matched that of the person who was overheard making the sale of cocaine base to the CI. Moreover, with regard to the marijuana, the twenty-eight bags were found in the northwest bedroom, which contained possessions and papers belonging to defendant. Ms. Powell, the only other adult listed on the lease, denied that the marijuana and cocaine base belonged to her. Thus, there was ample evidence that defendant possessed the drugs that were found at 26868 Penn.

Finally, the requisite intent to distribute was established not only by evidence that defendant sold a rock of crack cocaine to the CI during the controlled buy on January 29, but also by the quantity and manner of packaging of the drugs, and the presence of weapons and equipment (an electronic scale) for the sale of drugs, found as a result of the search of the premises. The district court therefore properly denied defendant's motion for judgment of acquittal.

---

house." According to Hall, defendant's belongings were still in the house at that time, although defendant told Hall that Casey Powell and his mother, Melody Coffee, would be removing his property from the house. Defendant's lease was not set to expire until October 2003. Hall testified that prior to the search, defendant had expressed no plans to move, and Hall had no plans to evict him.

IV.

Finally, defendant has raised a *Booker* claim regarding his sentence, challenging the district court's two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for the possession of firearms in connection with drug trafficking. *See United States v. Booker*, 125 S. Ct. 738 (2005); *United States v. Oliver*, 397 F.3d 369, 381 n.3 (6th Cir. 2005). The government agrees that this case is appropriate for resentencing. Therefore, we vacate defendant's sentence and remand for resentencing. In so doing, however, we reiterate this Court's recent admonition, in the wake of *Booker*, regarding the issue of judicial factfinding in determining the appropriate sentence under the advisory Guidelines:

> *Booker* did not eliminate judicial factfinding. Instead, the remedial majority gave district courts the option, after calculating the Guideline range, to sentence a defendant outside the resulting Guideline range. *Booker*, 125 S. Ct. at 764, 769; *U.S. v. Williams*, 411 F.3d 675, 678 (6th Cir. 2005). District courts, in cases such as these, must, therefore, calculate the Guideline range as they would have done prior to *Booker*, but then sentence defendants by taking into account all of the relevant factors of 28 U.S.C. § 3553, as well as the Guidelines range.

*United States v. Stone, et al.*, — F.3d — (6th Cir., Dec. 23, 2005), 2005 WL 3501590, at *3 (footnote omitted).

V.

For the reasons set forth above, we affirm defendant's convictions, but vacate defendant's sentences and remand for resentencing in light of *Booker*.