**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Elwood CLARK Defendant–Appellant.**

No. 05–3307.

United States Court of Appeals,
Sixth Circuit.

Aug. 25, 2006.

---

Before: BATCHELDER and McKEAGUE, Circuit Judges; and ACKERMAN, District Judge.*

**OPINION**

HAROLD A. ACKERMAN, Senior District Judge.

Defendant/Appellant Elwood Clark appeals his judgment of conviction and sentence. We **AFFIRM.**

**I. Background**

Defendant–Appellant Elwood Clark ("Clark") was employed as a bridge painting inspector for the Ohio Department of Transportation ("ODOT"). Clark was responsible for the inspection of bridge painting work performed by government contractors to ensure compliance with ODOT contract specifications. In 2000, Clark was assigned to inspect the preparation and painting work performed by Argo Contracting ("Argo") on Bridge # 137 in Summit County, Ohio (the "Bridge # 137 Project"). The Bridge # 137 Project was federally funded.

As part of his responsibilities, Clark was required to prepare and submit written reports to ODOT, including inspector daily reports and documentation logs. Such reports detail the quality and progress of work performed by painting contractors on site, to determine whether painting con-

---

\* Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

tractors should receive progress payments from ODOT for the work described.

On September 22, 2004, a federal grand jury returned a six-count indictment against Clark, charging him with one count of conspiring with Argo to accept bribes and make false statements, in violation of 18 U.S.C. § 371; one count of accepting bribes from Argo, in violation of 18 U.S.C. § 666(a)(1)(b); and four counts of submitting false statements in connection with a federally funded highway project, in violation of 18 U.S.C. § 1020. The initial indictment was superseded by a seven-count Superseding Indictment charging Clark with one count each of conspiracy and bribery, and five counts of submitting false statements in connection with a highway project. The Superseding Indictment charged Clark with falsifying daily inspection reports to show that Argo had met or exceeded contract specifications with respect to surface preparation and steel blasting of portions of Bridge # 137, when in fact Clark knew that Argo had not performed the required surface preparation and steel blasting in accordance with contract specifications.

At trial, the government's expert, Gary Tinklenberg, testified that his inspection of Bridge # 137 revealed that Argo had failed to perform adequate steel blasting on the bridge; had failed to eliminate rust, grit, and lead paint that should have been removed under the ODOT contract specifications; and had improperly painted over such accretions. Tinklenberg found these conditions on more than fifty percent of the areas of the bridge that he inspected.

In sharp contrast, Clark's reports, offered as evidence at trial, fail to indicate any problems in Argo's work. Instead, the reports indicated that "everything is great." (J.A. at 110.) Tinklenberg concluded that Clark had either failed to observe the surface preparation errors, or simply ignored them. (J.A. at 111.)

The government also presented as a witness Tony Vogel, the Division Deputy Director of Highway Operations for ODOT, who testified that Bridge # 137 needed to be repainted immediately, and that the overall cost of this repainting would be approximately $399,000. (J.A. 196, 198.) Vogel testified that this cost included both the out-of-pocket cost for the project, as well as an amount equivalent to the inconvenience of the traveling public. Vogel specified that the cost to the traveling public would be approximately $164,000, and the hard costs for the project would include design of plans ($10,000), costs to bid the job ($221), costs to properly inspect the job ($10,700) and the cost to pay a contractor to do the work ($213,988). (*Id.*) Clark's defense offered no testimony to refute Vogel's loss estimates.

At the close of the government's case, the district court granted Clark's motion to dismiss the conspiracy count. While the jury found Clark guilty of two counts of making false statements in connection with a highway project, it found Clark not guilty with respect to the bribery charges and three of the false statement charges.

The Presentence Report prepared for Clark set his base offense level as six, with a nine-level increase due to the loss amount of $399,000. (J.A. at 152.) The PSR concluded that Clark's offense involved "more than minimal planning" and applied a two-level increase, and applied an additional two-level increase for abuse of a "position of trust," resulting in a total offense level of 19. (J.A. at 153.) The PSR determined Clark's criminal history category to be I.

Clark objected to the PSR's calculation of the loss amount, arguing that no loss amount could be determined because the jury was not charged with finding a loss

amount. Clark also objected that the two-level increase for "more than minimal planning" should not apply.

At the sentencing hearing on March 3, 2006, the district court set the base offense level at six. The Court applied two separate two-level enhancements: one for "more than minimal planning," due to Clark's numerous false filings; and another for abuse of a position of trust. The district court rejected the PSR's recommendation of a nine-level increase for a loss amount of $399,000. Instead, the district court found that the relevant loss amount was equivalent to the hard costs of the repainting job, and thus constituted an amount more than $200,000 but less than $350,000. This corresponded with an eight-level increase. These calculations resulted in a total offense level of 18 with a criminal history category of I, and a corresponding suggested sentencing range of 27 to 33 months.

The district court then considered the § 3553(a) factors, and noted that the seriousness of Clark's offense and his position with the State of Ohio suggested a higher sentence, but his lack of a criminal history and inability to commit the same offense in the future (due to the loss of his job) militated against a higher sentence. Ultimately, the court sentenced Clark within the lower end of the suggested sentencing range, imposing a term of imprisonment of 28 months, in a judgment of sentence dated March 4, 2006.

The District Court had subject matter jurisdiction over this matter pursuant to 18 U.S.C. § 3231. The Court of Appeals for the Sixth Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and authority to examine the sentence imposed by the district court pursuant to 18 U.S.C. § 3742(a).

## II. Analysis

### A. Standard of Review

Clark appeals his conviction, asserting a challenge to the sufficiency of the evidence underlying his conviction for making false statements in connection with a highway project. Clark bears a heavy burden in making such a challenge. The standard of review for a sufficiency of the evidence challenge is "whether after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). This standard affords significant deference to the prosecution, permits the use of circumstantial evidence to sustain a verdict, and indicates that the evidence need not "remove every reasonable hypothesis except that of guilt." *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir.1999).

Clark has also challenged the District Court's adjustments to his base offense level, based on judicial factfinding. When reviewing a district court's sentencing decision, the Sixth Circuit reviews the district court's factual findings for clear error, and reviews the district court's legal conclusions *de novo*. *United States v. Hazelwood*, 398 F.3d 792, 795 (6th Cir.2005). The district court's interpretation and application of the United States Sentencing Guidelines is also reviewed *de novo*. *United States v. Gibson*, 409 F.3d 325, 338 (6th Cir.2005).

### B. Clark's Conviction for Making False Statements In Connection with a Federally Funded Highway Project Was Supported By Sufficient Evidence

Clark faces a "very heavy burden" in challenging his conviction for lack of suffi-

cient evidence. *See United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir.1986) (recognizing appellant's heavy burden in challenging a conviction on insufficiency grounds). The standard requires a deferential view of the evidence, in the light most favorable to the prosecution, and sustains conviction where *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Riffe,* 28 F.3d 565, 567 (6th Cir.1994) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). When reviewing a challenge to a conviction based on an insufficient evidence charge, the Sixth Circuit does not "weigh evidence, make credibility determinations, or substitute ... [its] judgment for the jury's verdict." *United States v. Crossley,* 224 F.3d 847, 855–56 (6th Cir.2000).

■ In this case, the Government produced ample evidence that Clark had issued numerous inspection reports regarding the Bridge # 137 project, and that none of the submitted reports reflected any problems or omissions in Argo Contracting's performance of the contract work. The Government's witness, Gary Tinklenberg, testified that the reports did not adequately reflect the work performed, in that Tinklenberg's inspection revealed that more than fifty percent of the bridge areas he inspected had not received adequate blasting and surface preparation prior to painting. Clark conceded at trial that the areas of the bridge that Tinklenberg inspected and photographed had not been adequately blasted and failed to comply with ODOT specifications for the contracted-for work. Tinklenberg concluded that Clark either did not observe the omissions, or ignored them. The sheer scope of the deficient work—on more than fifty percent of a bridge comprised of nearly 19,000 square feet of steel—indicated that

Clark either failed to inspect the work, and submitted false statements that approved work he had not inspected, or that Clark falsified reports claiming that the required blasting was performed as specified. The evidence before the jury was more than ample to permit a verdict that Clark had falsified reports in connection with the bridge project.

Clark argues that evidence offered at trial, relating to a bribery-conspiracy charge that was later dismissed, impermissibly tainted the trial and influenced the jury (by virtue of what Clark calls a "spillover effect"). However, we note that the jury actually acquitted Clark of bribery, and only found Clark guilty of two of the five false statement charges asserted. Thus, Clark's argument about a "spillover effect" from the conspiracy charge or the evidence submitted to prove the bribery charge lacks logical force, since the jury's verdict acquitted Clark of the bribery charge and three of the five false statement charges. This result does not indicate a spillover of indignation, or a tendency to engage in rash, wholesale condemnation of Clark, but rather speaks of the jury's deliberate and selective determination process, which resulted in a mixed verdict convicting Clark of only certain of the offenses charged by the Government. Thus Clark's "spillover" argument is unpersuasive. In sum, the Government presented ample evidence from which the jury could have found Clark guilty of the false statement charges. Clark's challenge to the sufficiency of the evidence therefore lacks merit.

**C. The District Court Committed No Error In Applying Sentence Enhancements Based Upon Judicial Findings Of Loss Amounts**

■ Clark asserts that he was denied due process when the district court adjust-

ed his offense level based on a loss amount that was determined by the court, rather than by the jury at trial. Clark asserts that the district court's determination of the loss amount, which provided the basis for the eight-level increase in Clark's base offense level at sentencing, constituted "judicial fact finding" which Clark asserts was prohibited by the Supreme Court in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

However, Clark's opposition argument is unavailing in light of numerous recent decisions of this Circuit that reiterate the propriety of sentence enhancements made on the basis of judge-found facts under the now-advisory United States Sentencing Guidelines. This Circuit has stated its acceptance of judicial factfinding in sentencing proceedings recently in *United States v. Coffee*, 434 F.3d 887, 898 (6th Cir.2006). In *Coffee*, the defendant challenged the district court's two-level increase in offense level for the possession of firearms in connection with drug trafficking, arguing that *Booker* prohibited the kind of judicial factfinding used by the district court in arriving at the sentence enhancement. This Court remanded the case for resentencing on other grounds, but took pains to explicitly approve the District Court's judicial factfinding:

> [W]e reiterate this Court's recent admonition, in the wake of *Booker*, regarding the issue of judicial factfinding in determining the appropriate sentence under the advisory Guidelines:
>
> *Booker* did not eliminate judicial factfinding. Instead, the remedial majority gave district courts the option, after calculating the Guideline range, to sentence a defendant outside the resulting Guideline range. District Courts, in cases such as these, must, therefore, calculate the Guideline range as they would have done prior to *Booker*, but then sentence

defendants by taking into account all of the relevant factors of 18 U.S.C. § 3553, as well as the Guidelines range.

*Coffee*, 434 F.3d at 897–98, quoting *United States v. Stone*, 432 F.3d 651, 654–55 (6th Cir.2005). Similarly, in *Stone*, we reviewed a district court's sentencing of a defendant convicted of tax evasion and tax fraud, and approved the district court's increase of the defendant's offense level based on a judicial quantification of the amount of tax loss involved in the offense, as well as a judicial determination that the defendant had obstructed justice by evading law enforcement efforts.

 Conceptually, the findings of the District Court in *Stone* regarding the amount of loss, and the existence of obstruction are very similar to the findings of the district court in the instant case, which quantified the amount of loss occasioned by Clark's false statements, and categorized the nature of the offense as involving "more than minimal" planning. In the present case, the district court imposed an eight-level increase in Clark's sentence based upon its own determination that the amount of loss to the taxpayers of the State of Ohio as a result of Clark's false statements was greater than $200,000 and less than $350,000. This was less than the amount recommended in the Presentence Investigation Report, which utilized a $399,000 figure and recommended a nine-level increase in sentencing. The district court's determination of the loss amount was premised on the testimony of Tony Vogel, which provided ample, unrefuted evidence on which the District Court could base its determination. Moreover, the district court did not err in determining that Clark's offense involved "more than minimal" planning. The district court imposed a two-level increase in Clark's offense level for this factor, which the district court found based on evidence that Clark had

submitted a large number of falsified reports which implied that Clark had made false statements over a period of time.

*Coffee* and *Stone* serve as clear precedent for our approval of sentence enhancements based on judge-found facts in the present case. We reiterate that *Booker* does not preclude a district court from engaging in factual determination to assist in calculating proposed sentencing enhancements under the now-advisory Sentencing Guidelines. Thus, there was no error in the District Court's determination of the loss amount and the corresponding imposition of an eight-level increase in Clark's offense level, nor did the court err in finding Clark had engaged in "more than minimal" planning, and imposing a two-level increase accordingly.

### III. Conclusion

Clark's appeal of his conviction on sufficiency grounds is without merit, as there was ample evidence before the jury to support Clark's conviction on two of five charged counts for making false statements in connection with a federally funded highway project. Clark's arguments against judicial factfinding in sentencing adjustments are also unavailing, as numerous recent cases in this Circuit support the continued viability of judicial factfinding in support of sentence enhancements. Accordingly, for the foregoing reasons, this Court **AFFIRMS** the judgment of conviction and the sentence rendered by the District Court.