**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

Case No. 17-2084

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 06, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| MICHAEL NATHANIEL BOYD, | ) | MICHIGAN |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:  BOGGS, SILER, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge.  Anonymous tipsters told the Kalamazoo police that Michael Boyd was selling drugs.  The police enlisted an informant to confirm.  The informant called Boyd and set up a sale in a parking lot behind Boyd's apartment.  Police watched a person walk out of Boyd's apartment, approach the informant's car, and sell him drugs.  The informant gave the drugs to the police and confirmed that Boyd sold them.

A state magistrate judge issued a warrant to search Boyd's apartment.  The search uncovered drugs and guns.  Boyd claims that the search violated his rights under the Fourth Amendment.  Because the police had ample grounds to establish a fair probability that Boyd's apartment harbored drugs, we disagree and affirm.

Officer Aaron Ham works for the Kalamazoo Valley Enforcement Team.  He has investigated drug crimes for over seventeen years.  One day in May 2016, an informant told Officer

Ham that Michael Boyd was selling drugs out of his apartment on McCourtie Street in Kalamazoo. Officer Ham drove to McCourtie Street to verify the tip. He watched Boyd drive down McCourtie Street and enter his upstairs apartment. But he did not see Boyd sell any drugs.

Over the next few months, Officer Ham received two more tips that Boyd was selling drugs. On top of that, Officer Ham learned, Boyd carried a pistol for protection, despite prior convictions that made that illegal. This time, Officer Ham decided that staking out Boyd's apartment would not suffice. He recruited one of the informants to catch Boyd in the act.

Officer Ham, the informant, and three other officers drove to Boyd's apartment. The informant called Boyd to set up a deal. Boyd agreed to meet the informant in a parking lot behind Boyd's apartment to sell him methamphetamine. After ensuring that the informant did not have other sources of money or drugs on him or in his car, the police gave the informant police funds and placed a wire on him. They saw a person matching Boyd's description walk out of Boyd's apartment, approach the informant's car, and sell him drugs. The informant returned to the officers, turned over the drugs, and identified Boyd as the seller.

Officer Ham sought a warrant to search Boyd's apartment for drugs and guns. He drafted an affidavit describing the tips he received and the things he saw, including the fact that Boyd had four outstanding warrants for his arrest at the time. A magistrate judge issued the warrant, and police searched the apartment. The search turned up methamphetamine, marijuana, cocaine, pills, a pill grinder, a digital scale dusted with drug residue, packaging materials, a stolen handgun, and a shotgun. When asked about the items in his apartment, Boyd told officers "I do what I do." R. 75 at 5. "I know what I do is wrong," he explained. *Id.* But "I'll be accountable for my actions." *Id.*

After the federal government charged him with violating drug and gun laws, Boyd moved to suppress the evidence obtained during the search, arguing that the statements in the affidavit failed to establish probable cause. When that motion failed, he filed a motion to suppress the evidence on the independent ground that some of the statements in the affidavit were false. The district court denied the motion after concluding that the allegations did not merit an evidentiary hearing. *See Franks v. Delaware*, 438 U.S. 154 (1978). Boyd pleaded guilty to distributing drugs and possessing guns in furtherance of drug trafficking, though he reserved his right to challenge the Fourth Amendment rulings. The court sentenced him to 20 years.

Boyd appeals both suppression rulings.

*Probable cause*. Probable cause exists if there "is a fair probability that contraband or evidence of a crime will be found in a particular place." *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017) (quotation omitted). The affidavit contained ample information to establish a fair probability that Boyd's apartment harbored drugs. Three informants told the police that Boyd dealt drugs from his McCourtie Street apartment. Officer Ham saw Boyd enter that apartment in May. And in August the officers recruited an informant to buy drugs from Boyd. Officers listened as the informant called Boyd to set up the sale. They searched the informant and his car for drugs and money before sending him in. They watched someone matching Boyd's description walk out of Boyd's apartment, approach the informant, and sell him drugs. The informant turned the drugs over to the police and confirmed that Boyd sold the drugs. All evidence considered, the investigation yielded sufficient information for the officers to conclude that Boyd had drugs in his apartment.

*United States v. Coffee*, 434 F.3d 887 (6th Cir. 2006), provides a useful comparison. Officers received a tip that Coffee sold drugs out of his residence. *Id.* at 891. They used the

informant to verify the tip. *Id.* The officers fitted the informant with a wire and watched as he entered the home. *Id.* They listened as he bought drugs from Coffee. *Id.* Based on this information, the court held that the magistrate could properly conclude that there was a fair probability that officers would find more drugs in Coffee's home. *Id.* at 894–95. What was true for Coffee is true for Boyd.

Boyd complains that the affidavit did not contain any statements about the confidential informant's reliability, faulting Officer Ham for failing to include information about the informant's identity, the length of their relationship, and the accuracy of past tips. But an affidavit is evaluated on the "adequacy of what it does contain," not "what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc). The officers' first-hand observations of the drug sale established probable cause that Boyd's apartment contained drugs, making it unnecessary to prove that the informant was reliable as well.

For what it's worth, facts that establish an informant's reliability "need not take any particular form." *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005). One way to establish an informant's reliability is to corroborate the details of his tip. *Id.* That's what happened here. After the informant told Officer Ham that Boyd sold drugs out of his apartment, the officer recruited the informant to buy drugs from Boyd. Both the phone call setting up the sale and the sale itself corroborated the informant's observation: that Boyd sold drugs out of his apartment.

Shifting gears, Boyd argues that the affidavit failed to establish a sufficient "nexus" between Boyd's apartment and the site of the illegal activity. *United States v. Carpenter*, 360 F.3d 591, 594–95 (6th Cir. 2004) (en banc). But that pushes the facts farther than they can go. Officer Ham received three tips that Boyd sold drugs out of the McCourtie Street apartment. In May, he saw Boyd leave and return to the apartment. The drug sale took place in a parking lot behind the

apartment. Officers watched the drug dealer walk out of the apartment. And the confidential informant confirmed that Boyd was the seller. All of that adequately linked Boyd's apartment to the illegal deeds. *See United States v. Berry*, 565 F.3d 332, 339 (6th Cir. 2009).

Not one of the cases cited by Boyd helps his cause. *United States v. Washington* "assume[d] without deciding that probable cause did not exist." 380 F.3d 236, 240 (6th Cir. 2004). That assumption tells us nothing. The affidavit in *United States v. Brown* stated that officers detected the odor of drugs in Brown's car and that Brown might have dealt drugs. 828 F.3d 375, 382–83 (6th Cir. 2016). But it contained no evidence that Brown distributed drugs from his home or that the police conducted surveillance of it. *Id.* The affidavit in *United States v. McPhearson* stated only that officers found a small amount of cocaine in the suspect's pocket when they arrested him in front of his house on an unrelated charge. 469 F.3d 518, 520–21 (6th Cir. 2006). But that affidavit, unlike the one here, contained no evidence that the suspect sold drugs. *Id.* at 524–25.

*Franks hearing.* Boyd separately argues that he is entitled to a *Franks* hearing to determine if Officer Ham lied to obtain the search warrant. *See Franks v. Delaware*, 438 U.S. 154 (1978). To obtain such a hearing, a defendant must make a preliminary showing that (1) the affiant knowingly or recklessly included a false statement in the search warrant affidavit, and (2) the false statement was necessary to the probable cause finding. *United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013). Not one of Boyd's allegations merits a hearing.

Boyd first claims that the geographical features of the apartment complex made it impossible for the officers to observe Boyd's apartment and the confidential informant at the same time, as the affidavit claimed they did. But he has not made a substantial preliminary showing that the claim was false. The affidavit explained that there were two officers involved in the surveillance: Officer Ham and Sergeant Ferguson. The district court also found that the officers

could have used video and audio technology to monitor both locations. It was thus quite possible for the police to watch both locations at the same time.

Boyd adds that Officer Ham lied when he stated in the affidavit that the officers did not locate "other contraband and/or US Currency" on the informant after the drug deal. R. 23-1 at 4. Boyd points out that the informant had $10 on him, suggesting that the informant was tainted. But as the district court explained, the money was merely leftover police money from the drug deal. The affidavit stated only that the informant had no "*other* . . . US Currency" on him—no more money in other words from any other sources on him. Here too Boyd has not made a substantial preliminary showing that this statement was false.

Boyd claims last of all that the affidavit omitted information that the confidential informant interacted with an unknown third party after the drug deal. But *Franks* is generally inapplicable to omissions, save in the "*very* rare case" where the affiant excluded critical information intentionally to mislead the judge. *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998). Boyd does not allege that Officer Ham omitted this information to mislead the judge, and at any rate he presents no such evidence. It's doubtful that the omitted information would have changed the probable cause calculus anyway. It would not have changed the fact that three informants accused Boyd of selling drugs out of his apartment. It would not have changed the fact that police caught Boyd arranging a drug sale on his phone. And it would not have changed the informant's allegation that Boyd sold him drugs. This alleged omission does not merit a *Franks* hearing. *See Hale v. Kart*, 396 F.3d 721, 727 (6th Cir. 2005).

We affirm.