NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0416n.06

No. 23-1839

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Oct 22, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| ANTHONY DWAYNE WILLIAMS, | ) ) | |
| Defendant-Appellant. | ) ) | OPINION |

Before: SILER, GRIFFIN, and MATHIS, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Anthony Williams appeals the district court's denial of his motion to suppress evidence obtained from his two cell phones that were seized after an investigatory *Terry*[1] stop. Because reasonable suspicion supported Williams's twenty-three-minute detention, and officers later seized the phones incident to a lawful arrest supported by probable cause, we affirm.

I.

The following facts are undisputed. Williams rear-ended a vehicle at a busy intersection in Grand Rapids, Michigan. The driver of the vehicle that Williams hit, known only as "L.V.," called the police. When Officers Roxanne Partak and Thomas Gootjes arrived at the accident scene, L.V. told Officer Gootjes that following the accident, Williams immediately jumped out of

---

[1]*Terry v. Ohio*, 392 U.S. 1, 30 (1968).

his car with a backpack, ran into a wooded neighborhood, and returned without the backpack. Williams and his girlfriend were at the scene when the police arrived.

The police also learned that Williams was on federal supervised release. Thereafter, they frisked, handcuffed, and placed Williams in the back of Officer Partak's patrol car while Officer Gootjes searched for the backpack. Officer Gootjes followed Williams's footprints in the snow and, twenty-three minutes later, located the backpack in a ravine. In the backpack, Officer Gootjes found marijuana, drug paraphernalia, ammunition, and an empty handgun box. At that point, Officer Partak arrested Williams and confiscated two cell phones in his possession. One of the phones contained photographs and text messages suggesting Williams, a felon, was involved in a firearm transaction.

Based on the evidence recovered from the backpack and the seized phones, a grand jury indicted Williams for possessing a firearm and ammunition as a felon. Williams moved to suppress the evidence obtained from the two phones, arguing that the phones were fruit of the poisonous tree because the officers arrested him without a warrant or probable cause. The district court denied the motion, concluding that the encounter began as a proper *Terry* stop and ripened into a lawful arrest after the officers discovered the backpack and its contents. Accordingly, the district court found that law enforcement legally seized the phones in the search incident to a lawful arrest. Williams conditionally pleaded guilty to possessing ammunition as a felon, in violation of 18 U.S.C. § 922(g)(1), and timely appealed.

II.

The sole issue on appeal is whether the district court properly denied Williams's motion to suppress the cell-phone evidence. When considering a district court's decision regarding a suppression motion, we review the district court's factual findings for clear error and legal

conclusions de novo. *United States v. Campbell*, 549 F.3d 364, 370 (6th Cir. 2008). The issue here—whether there was reasonable suspicion of criminal activity to justify the continuation of the *Terry* stop—is a mixed question of law and fact, which we review de novo. *Id.* Because the district court denied the motion to suppress, we consider the evidence in the light most favorable to the government. *Id.*; *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006).

## A.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. This protection extends "to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *Campbell*, 549 F.3d at 370 (citation omitted). However, an officer may conduct a brief investigatory stop without a warrant if she has reasonable suspicion of criminal activity. *See Terry*, 392 U.S. at 30. Reasonable suspicion "requires more than a mere hunch" but "less than probable cause." *Campbell*, 549 F.3d at 370 (quoting *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008)). To determine whether reasonable suspicion supported an investigatory stop, we look at circumstances such as an officer's observations, an officer's inferences based on her training and experience, dispatch information, and the area where the suspicious activity occurred. *Id.* at 371; *see United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008). Additionally, the stop must not exceed its initial scope or last longer than the amount of time necessary to carry out its purpose. *Campbell*, 549 F.3d at 372; *see Dorsey*, 517 F.3d at 398. Otherwise, the stop may ripen into an arrest requiring probable cause. *Campbell*, 549 F.3d at 372. In this reasonable-suspicion analysis, we look at the totality of the circumstances. *See United States v. Perez*, 440 F.3d 363, 371 (6th Cir. 2006).

Our reasonable-suspicion inquiry is thus twofold: (1) whether Williams's initial seizure was supported by reasonable suspicion; and (2) whether Officer Partak's actions were reasonably related in scope and duration to the circumstances that justified the initial stop. *See Terry*, 392 U.S. at 20; *Dorsey*, 517 F.3d at 398–99. We answer both in the affirmative.

1.

Undoubtedly, Officer Partak "seized" Williams when she handcuffed and placed him in the back of the cruiser. *See Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006) (explaining that a "seizure" by an officer occurs when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave" (citation omitted)). And certainly, there "was a proper basis" for the detention. *Id.* at 779. Officers Partak and Gootjes had reasonable suspicion that Williams was involved in criminal activity. Eyewitness testimony established that he fled the accident scene and disposed of a backpack, all the while on federal supervised release. Thus, the officers reasonably suspected that Williams violated Michigan law by leaving the accident scene. *See* Mich. Comp. Laws §§ 257.618(1), 257.619(a) (requiring a driver to remain at the accident scene until he provides his personal and vehicle information to law enforcement or to the other driver involved in the accident). Importantly, they also had reason to believe that he disposed of incriminating evidence based on his flight from the scene of the accident and return without his backpack. In this regard, it is well established that flight is evidence of guilt. *See, e.g.*, *United States v. Oliver*, 397 F.3d 369, 375 (6th Cir. 2005).

2.

On appeal, the main issue is the reasonableness of Williams's detention; specifically, its scope and twenty-three-minute duration before his formal arrest. Williams argues that the manner and length of his *Terry* stop were unreasonable and prolonged, amounting to a de facto arrest without probable cause. We disagree.

A *Terry* stop "must be reasonably related in scope to the circumstances which justified the interference in the first place." *Dorsey*, 517 F.3d at 398 (internal quotation marks omitted). As for duration, the stop must not last longer than necessary to effectuate its purpose. *Id.* And an officer should use the "least intrusive means reasonably available to verify or dispel [her] suspicions in a short period of time." *Id.* (citation omitted). While there is no "litmus test" for determining when an investigatory stop becomes an arrest that requires probable cause, we consider factors such as the length of the detention, the manner in which it was conducted, and the degree of force used. *Id.* at 399; *Smoak*, 460 F.3d at 781.

First consider the traffic stop's scope. Williams does not argue that his initial encounter with the officers was unjustified, but he asserts that his prolonged detention in the back of the police cruiser, while handcuffed, exceeded the scope of the *Terry* stop, constituting a de facto arrest that required probable cause. "[C]oncern for officer safety permits a variety of police responses in differing circumstances," *Bennett v. City of Eastpointe*, 410 F.3d 810, 822 (6th Cir. 2005), including detaining a defendant in the back of a police patrol car while officers investigate their suspicions of criminal activity, *United States v. Jacob*, 377 F.3d 573, 580 (6th Cir. 2004).

Consider what transpired. Williams fled the scene of an accident and disposed of his backpack. He was therefore a flight risk and the subject of reasonable suspicion of criminal activity. In addition, the accident scene was bustling with traffic and Williams's girlfriend was

present, adding to the risk of a flight. These circumstances made it reasonable to detain Williams in the back of the police car.

Similarly, it was reasonable under the circumstances for Officer Partak to handcuff Williams. *See United States v. Sheckles*, 996 F.3d 330, 345 (6th Cir. 2021) ("[H]andcuffing does not affect the legitimacy of the *Terry* stop as long as the facts justify the precaution." (internal quotation marks omitted)). Doing so was a minimally intrusive means to protect herself and the public. Officer Partak is smaller than Williams, was alone with him while Officer Gootjes searched for the backpack, and was outnumbered by Williams and his girlfriend. Her actions were precautionary and reasonable.

Likewise, the length of Williams's detention was reasonable under the circumstances. It was apparent that Williams could not have run too far after the accident because he returned to the scene before the police arrived. In fact, it only took about twenty-three minutes for officers to locate the backpack. Such a short twenty-three-minute detention falls well short of transforming a *Terry* stop into an arrest. *See Sheckles*, 996 F.3d at 345 (collecting cases to support that "under *Terry*, we and other courts have repeatedly upheld vehicle stops of less than (and sometimes even more than) an hour"). As such, we conclude that the duration of the *Terry* stop was reasonable.

For these reasons, Williams's detention did not violate the Fourth Amendment.

B.

Regarding the seizure of the cell phones, Williams contends that the seizure exceeded the scope of the investigation into the car accident. But upon discovery of the backpack, officers had probable cause to arrest Williams for multiple crimes, including supervised-release violations and firearm-related crimes. At that point, they lawfully searched Williams incident to an arrest and confiscated his cell phones. *See Chimel v. California*, 395 U.S. 752, 762–63 (1969). Thus, the

officers seized the cell phones pursuant to a valid arrest and on this basis the district court correctly denied Williams's motion to suppress.

### III.

We affirm the district court's denial of Williams's motion to suppress.